## ALLNET COMMUNICATIONS SERVICES, INC., Plaintiff,

### v.

## NATIONAL EXCHANGE CARRIER ASSOCIATION, INC., Defendant.

### Civ. A. No. 89–3345 SSH.

United States District Court, District of Columbia.

July 31, 1990.

William Robert Malone, Washington, D.C., for plaintiff.

Timothy William Bergin, Washington, D.C., for defendant.

## MEMORANDUM ORDER

STANLEY S. HARRIS, District Judge.

This matter is before the Court on defendant's motion to dismiss, plaintiff's opposition, and defendant's reply. For the reasons set forth below, defendant's motion is granted and the case is dismissed.

### Background

Plaintiff ALLNET Communications is an interexchange carrier (IXC) that provides long distance telephone service in two markets. In the interstate long distance market, ALLNET competes against other interexchange carriers such as AT & T, MCI, and others. In the intrastate long distance market, plaintiff competes against local exchange carriers (LECs) such as C & P Telephone Co.

Defendant National Exchange Carrier Association (NECA) is a non-profit, non-stock membership corporation established pursuant to regulations promulgated by the Federal Communications Commission (FCC) in the wake of the 1984 AT & T divestiture. *See* 47 C.F.R. §§ 69.601–69.-612 (1989) (description of NECA functions and composition). NECA is comprised of the approximately 1,400 local exchange carriers in the United States. Moreover, many of NECA's officers and employees are on temporary assignment from the member LECs.

NECA's primary function is to prepare and file, on behalf of its membership, certain industry-wide access charge tariffs with the FCC.[1] *See* 47 C.F.R. § 69.603

---

1. When an ALLNET customer places a long distance call, ALLNET depends upon a local

(1989). A component of this access charge is the Lifeline Assistance and Universal Service Fund (LA & USF). The LA & USF program is designed to assist low-income households obtain and afford telephone service, and to assist high-cost LECs keep local service rates affordable. *See* 4 FCC Rcd 6134 (1989).

NECA acts as the administrator of the LA & USF program. Once a month, NECA bills certain IXCs that use local exchange switching facilities for the LA & USF charge. *See* 47 C.F.R. §§ 69.116–117 (1989). NECA also collects and allocates the LA & USF revenue among the local exchange carriers. *Id.*

ALLNET refuses to pay NECA the LA & USF tariff for the period April 1, 1989, through August 1, 1989. ALLNET contends that for various reasons, the tariff at that time was invalid under 47 U.S.C.A. § 203 (West 1962 & Supp.1990).[2] ALLNET moved for an order temporarily restraining defendant from sending out notices of ALLNET's non-payment of the tariff to the NECA membership.[3] NECA voluntarily has refrained from sending out the notices and has in turn filed a motion to dismiss.[4] NECA suggests that this Court lacks subject matter jurisdiction over ALLNET's claims, and that the controversy should in any event be referred to the FCC under the doctrine of primary jurisdiction.

ALLNET counters that its suit is properly before a district court for three main reasons. First, ALLNET properly elected a district court forum due to the interrelationship between the Communications Act, 47 U.S.C.A. ch. 5 (West 1962 & Supp.1990), and the Declaratory Judgment Act, 28 U.S.C.A. § 2201. Second, the issues at hand are legal questions properly within the competence of this court, rather than questions within the exclusive jurisdiction of the FCC. Third, the FCC cannot assure an impartial adjudication of the dispute between the parties.

## Discussion

The Court agrees with ALLNET's own conclusion that NECA is not a common carrier.[5] Accordingly, the Communications Act does not confer a cause of action or jurisdiction upon this court, and therefore, this case must be dismissed.

ALLNET attacks the validity of the relevant LA & USF tariff in reliance upon 47 U.S.C.A. § 203. The problem with this challenge is that § 203, and the rest of title II, proscribe the activities of common carriers. Therefore, it is not for this Court to determine whether the LA & USF tariff complies with section 203, as this statute only proscribes the tariffs of common carriers. NECA is not a common carrier, thus title II provides no statutory authority

exchange carrier's equipment to connect that customer to the ALLNET network. ALLNET then relies upon an LEC to connect its network with the party being called. Access charges are fees assessed the IXCs, such as ALLNET, for this use of LEC equipment.

**2.** Section 203(a) mandates that every common carrier file schedules of charges and the classifications, practices, and regulations affecting such charges. Section 203(b) requires prior notice for tariff changes. Section 203(c) forbids carriers from providing communication service except under tariff. Section 203(d) enables the FCC to reject tariffs that do not provide an effective date.

**3.** Incorporated into the tariff is a self-help remedy that permits NECA to advise its membership of ALLNET's failure to pay the LA & USF charges. ALLNET asserted in its motion for a temporary restraining order that invocation of the self-help remedy would cause irreparable harm. Under the terms of the tariff, the LECs, upon receiving notice of non-payment, have

three options: (1) refuse additional applications for service by ALLNET; (2) refuse to complete pending orders for service by ALLNET; (3) discontinue service to ALLNET.

**4.** NECA has agreed to refrain temporarily from sending out any notices in order to permit ALLNET (within 21 days) to initiate proceedings before the FCC for resolution of its claims.

**5.** ALLNET on several occasions has noted that NECA is not a common carrier for purposes of the Communications Act. *See* ALLNET Complaint at ¶ 11: "NECA does not provide communications services and is not a carrier within the meaning of Section 3(h) of the Communications Act of 1934, 47 U.S.C. § 153(h)"; ALLNET Memorandum in Support of Motion for Temporary Restraining Order at fn. 1: "NECA is not a telecommunications common carrier but only acts as an agent for the local exchange carriers who are its members."

upon which to base liability against NECA for any alleged violations of the Communications Act. *American Sharecom, Inc. v. Southern Bell Tel. and Tel. Co.*, No. 87–1334 (D.D.C. August 18, 1989) (LEXIS 13684, Genfed library).[6]

ALLNET has stated that NECA acts as an agent for its common carrier members. *See* footnote 5. However, this does not transform NECA into a carrier for purposes of title II. *See American Sharecom.* Title II makes no reference and imposes no liability on those acting for the benefit of, or as the agent for, common carriers. *Id.* Therefore, NECA may not be held accountable for any alleged violations of title II due to its non-carrier status.[7] Accordingly, it hereby is

ORDERED, that defendant's motion to dismiss is granted.

SO ORDERED.

---

**6.** In *American Sharecom,* Judge Johnson dismissed plaintiff's claims against NECA and another defendant for alleged Communications Act violations, as neither party was a common carrier.

**7.** Plaintiff may be dissatisfied with this result. However, Congress, and not the courts, is the forum to approach if plaintiff believes that non-carriers should be held accountable for Communications Act violations.