**ALLNET COMMUNICATION SERVICE, INC., Appellant**

v.

**NATIONAL EXCHANGE CARRIER ASSOCIATION, INC., a Delaware Corporation, Appellee.**

No. 90–5343.

United States Court of Appeals, District of Columbia Circuit.

Argued Feb. 19, 1992.

Decided June 9, 1992.

---

William Malone, Washington, D.C., with whom Roy L. Morris, Cambridge, Ohio, was on the brief, for appellant.

Timothy W. Bergin, with whom James P. Murphy, Kenneth A. Levy and Richard A. Ashoff, Washington, D.C., were on the brief, for appellee. Herbert E. Marks, also entered an appearance for appellee.

Before: WALD, WILLIAMS and D.H. GINSBURG, Circuit Judges.

Opinion for the Court filed by Circuit Judge STEPHEN F. WILLIAMS.

STEPHEN F. WILLIAMS, Circuit Judge:

Allnet Communication Services sued the National Exchange Carrier Association ("NECA"), seeking a declaratory judgment that it was not liable for certain access charges. The district court dismissed the suit, holding that it lacked subject matter jurisdiction and that Allnet had failed to state a claim for relief. 741 F.Supp. 983. We reject the district court's reasoning but affirm on the alternative ground that the Federal Communications Commission has primary jurisdiction over the dispute.

\* \* \*

NECA is a nonprofit, non-stock membership corporation that was formed pursuant to FCC orders following the break-up of AT & T to perform certain services on behalf of over 1200 local telephone companies (local exchange carriers or "LECs"). See generally 47 CFR §§ 69.601–69.612 (1991) (describing NECA and its functions). Specifically, NECA prepares and files joint tariffs on behalf of its members for access charges they collect from end-users and long-distance telephone companies—interexchange carriers such as plaintiff Allnet—for the use of wires and other equipment needed for making interstate long-distance calls.

The access charge includes funds collected for the Lifeline Assistance program and Universal Service Fund (hereafter simply the "Universal Service Fund"), programs to help low-income households pay for telephone service and to enable local telephone companies with high costs to provide affordable service. Cf. *Market Structure (Phase I) Order*, 93 FCC 2d 241, 281–82 (1983). NECA administers the Universal Service Fund, collecting the charges from interexchange carriers and distributing the revenues among the local exchange carriers. See 47 CFR §§ 69.116–69.117. Beginning April 1, 1989, the Universal Service Fund tariff was unbundled from the general access tariff in order to place the cost burden differently from that for access generally. See *In the Matter of Amendment of Part 69 of the Commission's Rules Relating to the Assessment of Charges for the Universal Service Fund and Lifeline Assistance*, 4 FCC Rcd. 6134, ¶ 5 (1989).

This dispute concerns NECA's bill to Allnet for Universal Service Fund charges accrued during the four-month period starting April 1, 1989. When NECA attempted to collect the charges, Allnet refused to pay, and NECA eventually threatened to use its "self-help" remedy—notifying the LECs of Allnet's refusal to pay so that they would cut off Allnet's access to interexchange services. Allnet, in turn, filed a complaint in the district court for a declaration of non-liability, invoking the Declaratory Judgment Act, 28 U.S.C. § 2201, and asserting both diversity and federal ques-

tion jurisdiction, 28 U.S.C. §§ 1331, 1332 & 1337. Allnet alleged that it was not liable for the charges because they had not been published as valid common carrier tariffs as required by § 203 of the Communications Act, 47 U.S.C. § 203.

Allnet also moved for an order temporarily restraining NECA from notifying its members of Allnet's non-payment. NECA agreed to refrain from such notice and moved to dismiss the declaratory suit, claiming that the district court lacked subject matter jurisdiction and, alternatively, that the FCC had primary jurisdiction. The district court dismissed, concluding that as § 203 prescribes tariffs only for "common carriers", and NECA is not itself a common carrier, it could not have violated § 203. Accordingly, the court said, Allnet had no federal cause of action. *Allnet Communication Services, Inc. v. NECA*, 741 F.Supp. 983, 984–85 (D.D.C.1990). The court expressed no opinion on primary jurisdiction.

Allnet filed this appeal. Since then, NECA has filed a petition with the Commission for a declaratory ruling on whether Allnet was liable to it for the disputed charges. Allnet moved to dismiss, but the Commission has yet to act on the motion or on NECA's petition.

\* \* \*

There was, in fact, no want of subject matter jurisdiction in the conventional sense. Diversity jurisdiction under 28 U.S.C. § 1332 is not disputed—the parties were incorporated in different states and their principal places of business were in different states; the amount in controversy was over $900,000, well above the $50,000 minimum.

Further, the question of whether § 203 covers NECA is more complicated than the district court opinion suggests. Technically the court was correct that § 203 applies only to common carriers and that NECA is not one. But NECA was an entity specially created to collect charges on behalf of common carriers. Moreover, as shown below, the Commission appears to have assumed that NECA was subject to its tariff regulations. Unless that view violated the clear intent of Congress or was otherwise

an unreasonable construction of § 203, we would defer to it. *Chevron U.S.A. Inc. v. NRDC*, 467 U.S. 837, 842–43, 104 S.Ct. 2778, 2781, 81 L.Ed.2d 694 (1984).

█ Nonetheless, we affirm the dismissal of the suit on the ground that the Commission has primary jurisdiction, i.e., that it is best suited to make the initial decision on the issues in dispute, even though the district court had subject matter jurisdiction. The primary jurisdiction doctrine rests both on a concern for uniform outcomes (which may be defeated if disparate courts resolve regulatory issues inconsistently), *Texas & Pacific Ry. v. Abilene Cotton Oil Co.*, 204 U.S. 426, 441, 27 S.Ct. 350, 51 L.Ed. 553 (1907); see also Peter L. Strauss, One Hundred Fifty Cases Per Year: Some Implications of the Supreme Court's Limited Resources for Judicial Review of Agency Action, 87 Colum.L.Rev. 1093, 1121 (1987) (suggesting uniformity rationale for *Chevron* doctrine), and on the advantages of allowing an agency to apply its expert judgment, *United States v. Western Pacific R.R.*, 352 U.S. 59, 64, 77 S.Ct. 161, 165, 1 L.Ed.2d 126 (1956). Expertise, of course, is not merely technical but extends to the policy judgments needed to implement an agency's mandate. See *id.* at 65, 77 S.Ct. at 166; *Chevron*, 467 U.S. at 864–66, 104 S.Ct. at 2792–93.

Given the concern for uniformity and expert judgment, it is hardly surprising that courts have frequently invoked primary jurisdiction in cases involving tariff interpretations—an issue closely related to the central issues here, compliance of a tariff with regulatory standards and the consequences of imperfect compliance. For example, in *Western Pacific*, three railroads sued the United States on the ground that certain shipments of napalm gel should have been charged at the tariff rate for "incendiary bombs" rather than the lower rate claimed by the government. The Court held that the case was within the primary jurisdiction of the Interstate Commerce Commission, since the construction of the tariff involved technical and trans-

portation policy questions. See 352 U.S. at 65–70, 77 S.Ct. at 166–68.

Similarly, judicial resolution of Allnet's claims here would preempt the Commission from implementing what amount to policy decisions about the Universal Service Fund programs and technical questions on the adequacy of filed tariffs. The crux of Allnet's claim is that NECA's bills for the disputed charges were based on defective tariffs, so that the filed rate doctrine precludes liability. Cf. *Maislin Industries v. Primary Steel, Inc.*, 497 U.S. 116, 110 S.Ct. 2759, 111 L.Ed.2d 94 (1990). Indeed, Allnet cites a letter the Commission staff sent to NECA, noting apparent non-compliance with FCC rules, specifically the NECA tariffs' failure to include provisions to implement collection, such as by informing LECs of nonpayment. Letter from John Cimko, FCC Common Carrier Bureau (June 14, 1989), Joint Appendix ("J.A.") at 1. An attachment to the letter provided sample corrective tariff language, which also included phrases explaining that NECA was collecting Universal Service Fund charges "on behalf of" the LECs. J.A. at 4–5. In response to the letter, NECA filed tariff amendments that went into effect August 1, 1989.

Allnet contends that as the FCC staff letter directed NECA to revise its tariff and add new language, there is no remaining issue on which the Commission need be heard. Reply Brief at 12–14. But the staff letter's identification of technical errors in the tariffs, and its suggestion of remedial language, are far from a Commission determination of the errors' seriousness or, more importantly, their consequence. In no way does it establish that these errors relieved the interexchange carriers of liability for the charges or that NECA could not collect them through self-help if necessary. In fact, in a July 21, 1989 order the Commission implied that NECA's Universal Service Fund tariff *was* "in effect" at that date, i.e., before the staff-inspired amendments took effect. See *In the Matter of Amendment of Part 69*, 4 FCC Rcd. at 6134, ¶ 2. But the order does not address the staff letter's implications that the tariffs were not in compli-

ance, so there is some possibility that the Commission might ultimately find a violation that justified disallowing collection.

The Commission is clearly in a better position than we are to resolve any potential conflict between the staff letter and the July 21 order, to determine the consequences of any violation of its regulations that may have occurred, and to consider (if NECA pursues the point) whether a hybrid such as NECA is covered by § 203.

The posture of Allnet's suit as a declaratory judgment action strengthens the case for primary jurisdiction. Federal declaratory judgments are available as a matter of judicial discretion, not as of right, see 28 U.S.C. § 2201 ("any court of the United States ... *may* declare the rights and other legal relations of any interested party seeking such declaration") (emphasis added); *Public Service Commission v. Wycoff Co.*, 344 U.S. 237, 241, 73 S.Ct. 236, 239, 97 L.Ed. 291 (1952), and are not to be used "to pre-empt and prejudge issues that are committed for initial decision to an administrative body or special tribunal", *id.* at 246, 73 S.Ct. at 241. See also *Hanes Corp. v. Millard*, 531 F.2d 585, 595–98 (D.C.Cir. 1976) (applying *Wycoff* precept in order to allow arbitration to proceed).

The presence of additional, subordinate claims by Allnet does not make primary jurisdiction any less suitable. The additional claims are that: (1) Allnet qualified for exemption from the Universal Service Fund charges during the relevant period under 47 CFR § 69.5; (2) NECA has incorrectly computed Allnet's share of the Universal Service Fund charges; and (3) the Universal Service Fund charges were an unconstitutional tax. See Complaint for Declaratory Judgment and Injunctive Relief, *Allnet Communication Services v. NECA*, Civ. No. 89–3345, 6–8 (D.D.C. Dec. 14, 1989). The first two points appear to involve Commission judgments similar to those raised by the tariff validity question; even the constitutional issue, to the extent that the Universal Service Fund represents the Commission's choice rather than a congressional mandate, may warrant an initial take by the Commission. See *Meredith Corp. v.*

*FCC,* 809 F.2d 863, 872–74 (D.C.Cir.1987). In any event, it would make little sense to refrain from applying primary jurisdiction merely because of an ancillary claim that we would reach only after examination of ones clearly within the agency's purview.

Allnet suggests that application of primary jurisdiction here is precluded by § 206 and § 207 of the Communications Act, 47 U.S.C. §§ 206[1] & 207[2]. These permit persons aggrieved by common carriers' noncompliance with the Communications Act to bring damages actions in the district court. We understand Allnet to be arguing that its declaratory judgment action should be viewed as an inversion of NECA's potential § 207 claim against Allnet as a common carrier for injuries NECA has suffered through Allnet's nonpayment. We will assume so, but the statutory language by no means bars the Commission's primary jurisdiction. It says only that injured parties may institute collection suits in district court; it does not prohibit the court from withholding decision until the Commission has spoken on technical or policy questions that would determine the outcome. Indeed, the original source of the primary jurisdiction doctrine, *Texas & Pacific Ry. v. Abilene Cotton Oil Co.,* 204 U.S. 426, 27 S.Ct. 350, 51 L.Ed. 553 (1907), applied it to a provision of the Interstate Commerce Act explicitly preserving shippers' common law remedies for common carriers' overcharges. In establishing the doctrine, the Court explained that the judicial remedy "must be confined to redress of such wrongs as can, consistently with the context of the act, be redressed by courts without previous action by the Commission". *Id.* at 442, 27 S.Ct. at 356; see

also *ICC v. Atlantic Coast Line R. Co.,* 383 U.S. 576, 579–80, 86 S.Ct. 1000, 1004, 16 L.Ed.2d 109 (1966) (discussing consequences of a court referral to the Commission of issues that *Abilene* reserves to it); *Hansen v. Norfolk & Western Ry.,* 689 F.2d 707, 709–11 (7th Cir.1982) (applying *Abilene* to successor provision, 49 U.S.C. § 11705(c)(1), authorizing civil actions to enforce liability against common carriers).

Allnet seeks to limit *Western Pacific* by contrasting it with the earlier case of *Great Northern Ry. v. Merchants Elevator Co.,* 259 U.S. 285, 42 S.Ct. 477, 66 L.Ed. 943 (1922), in which the Court declined to apply primary jurisdiction to a dispute that turned on whether "the body of the rule" expressed in the tariff, or its exception, applied. *Id.* at 289, 42 S.Ct. at 478. The Court categorized construction of a tariff as a matter of law, acknowledging that if the matter involved technical issues, or the reasonableness of the rate, resort to the Commission would be appropriate. *Id.* at 291, 42 S.Ct. at 479. It is far from clear that *Great Northern* survives intact; *Western Pacific* itself, in explaining its holding, observed that "there would be no need to refer [a matter] to the Commission if that body, in prior releases or opinions, has already construed the particular tariff at issue or has clarified the factors underlying it", 352 U.S. at 69, 77 S.Ct. at 168, surely a very narrow view of the sort of tariff issue *not* requiring agency action. But even if *Great Northern* is unimpaired by the last 70 years of administrative law, the issues here do not involve tariff construction but the Commission's interpretation of its own regulations, on which it is owed great deference. See, e.g., *Martin v.*

---

1. Section 206 provides:

   In case any common carrier shall do, or cause or permit to be done, any act, matter, or thing in this chapter prohibited or declared ·to be unlawful, or shall omit to do any act, matter, or thing in this chapter required to be done, such common carrier shall be liable to the person or persons injured thereby for the full amount of damages sustained in consequence of any such violation of the provisions of this chapter, together with a reasonable counsel or attorney's fee, to be fixed by the court in every case of recovery, which attorney's fee shall be

taxed and collected as part of the costs in the case.

2. Section 207 provides:

   Any person claiming to be damaged by any common carrier subject to the provisions of this chapter may either make complaint to the Commission as hereinafter provided for, or may bring suit for the recovery of the damages for which such common carrier may be liable under the provisions of this chapter, in any district court of the United States of competent jurisdiction; but such person shall not have the right to pursue both such remedies.

*Occupational Safety and Health Review Commission,* —— U.S. ——, 111 S.Ct. 1171, 1175–76, 113 L.Ed.2d 117 (1991).

Finally, we reject Allnet's argument that this case is analogous to *Nader v. Allegheny Airlines,* 426 U.S. 290, 96 S.Ct. 1978, 48 L.Ed.2d 643 (1976), because it "does not turn on a determination of the reasonableness of [the] challenged practice", *id.* at 305, 96 S.Ct. at 1987. The Court refused to stay Nader's common law tort suit for fraudulent misrepresentation (based on the airline's overbooking policy), holding that the Civil Aeronautics Board's authority to ban deceptive practices did not displace the tort suit, and that no initial reference to the Board was appropriate. See *id.* at 299, 302, 96 S.Ct. at 1984, 1986. As Nader was not challenging the airline's tariff and there was no tariff provision or Board regulation on disclosure practices, and the tort suit was "within the conventional competence of the courts, ... the judgment of a technically expert body [wa]s not likely to be helpful in the application of the [tort] standards." *Id.* 304–06, 96 S.Ct. at 1987–88. Here, by contrast, Allnet's core claim is that NECA's tariff violates the Commission's regulations, a matter squarely within its expertise.

\*     \*     \*

Although courts often apply the primary jurisdiction doctrine by holding the lawsuit in abeyance so that the parties may turn to the relevant agency, see, e.g., *General American Tank Car Corp. v. El Dorado Terminal Co.,* 308 U.S. 422, 432–33, 60 S.Ct. 325, 331, 84 L.Ed. 361 (1940), we see no need to do so here. See *Far East Conference v. United States,* 342 U.S. 570, 576–77, 72 S.Ct. 492, 495, 96 L.Ed. 576 (1952). As Allnet has secured NECA's promise not to proceed to self-help measures, see above at 3, and as Allnet has agreed to waive its statute of limitations defense against NECA's claim, see *NECA v. Allnet Communication Services, Inc.,* No. 91–0660, Order (D.D.C. Oct. 23, 1991) (noting Allnet's waiver and dismissing NECA's protective lawsuit), we can discern no present prejudice to either party from dismissal. Accordingly, we affirm the district court's dismissal of Allnet's claims.

*So ordered.*