DIAL A CAR, INC., Appellant,

v.

TRANSPORTATION, INC. and
Barwood, Inc., Appellees.

No. 95–7143.

United States Court of Appeals,
District of Columbia Circuit.

Argued Feb. 2, 1996.

Decided April 30, 1996.

Rehearing and Suggestion for Rehearing
In Banc Denied June 28, 1996.

Mark E. Herlihy, Washington, DC, argued the cause for appellant, with whom James M. Loots was on the briefs.

David L. Meyer, Washington, DC, argued the cause for appellee Barwood, Inc., with whom Gregg H. Levy was on the brief.

Stephen W. Grafman and A. Thomas Morris, Washington, DC, were on the brief, for appellee Transportation, Inc.

Before: EDWARDS, Chief Judge, WALD and SILBERMAN, Circuit Judges.

Opinion for the Court filed by Chief Judge HARRY T. EDWARDS.

Separate concurring statement filed by Chief Judge HARRY T. EDWARDS.

Separate opinion, concurring in part and dissenting in part, filed by Circuit Judge SILBERMAN.

HARRY T. EDWARDS, Chief Judge:

Appellant Dial A Car, Inc., a company that provides on-call taxi transportation to corporate account customers, alleges that two other taxi companies, Transportation, Inc. (doing business as "Red Top") and Barwood, Inc., are illegally providing reduced-price competition in this line of work in the District of Columbia even though they are not licensed to provide such services within the city. Appellant raises two principal claims. First, Dial A Car charges that appellees have attempted to monopolize the market for corporate account taxi service, in violation of the Sherman Antitrust Act. Second, appellant alleges that Red Top and Barwood have violated the Lanham Act, a federal statute that proscribes false advertising and misstatements of fact in the commercial context, by falsely asserting in their promotional literature that they lawfully may perform corporate account services within the District. Both of these claims were dismissed by the District Court. We affirm.

The Sherman Act claim is unsupportable because Dial A Car has failed to allege an antitrust injury and has also failed to plead facts indicating any probability that appellees will be able to monopolize the relevant market. Furthermore, the alleged misrepresentation of fact upon which Dial A Car has premised its Lanham Act claim is more appropriately viewed as a disagreement about the proper interpretation of local taxicab regulations promulgated by the D.C. Taxicab Commission. Because the Commission itself has not resolved this disagreement, we find that appellees' legal status as on-call providers of corporate account services within the District is a contested question of statutory interpretation rather than a clearly established fact. Therefore, the statements at issue cannot form the basis of a Lanham Act claim.

## I. BACKGROUND

### A. *The Dispute*

Dial A Car is licensed in the District of Columbia to operate corporate account, or "Blue Car," service that provides on-call, point-to-point transportation billed on a contract, rather than a tariff, basis. Blue Car service generally uses unmarked luxury cars and is consequently more expensive than regular taxicab service, which Dial A Car does not provide. Although Red Top and Barwood both maintain fleets of cars licensed to provide Blue Car service in D.C., Dial A Car filed suit against appellees for antitrust and false advertising violations based on their alleged operation of Blue Car service in the District *using regular taxicabs*. These taxicabs are licensed in Virginia and Maryland, respectively, but not in D.C.

The D.C. Code provides that "[n]o person ... shall operate a taxicab ... or taxicab service within the District without first procuring all applicable licenses required by the Commission ... or in the event of licensure by another jurisdiction pursuant to reciprocal agreement." D.C.Code § 40–1719(a) (1990); *see also Lim v. District of Columbia Taxicab Comm'n*, 564 A.2d 720, 723 (D.C.App.1989) (The court noted that authority for Virginia cabs to operate in D.C. is granted under a reciprocity agreement.). The reciprocal agreement in this case is set out in D.C. Taxicab Commission Office Administrative Order No. 4 ("Order No. 4"). According to appellant, Order No. 4 permits regular Red Top and Barwood taxicabs to drop off passengers in the District of Columbia only if they were picked up in the cabs' county of licensure (Arlington County, Virginia or Montgomery County, Maryland, respectively), and to pick up passengers in the District only if the passengers have a direct destination within those same counties.

Appellees concede that these limitations apply to their standard taxicab service, but contend that the restrictions do not apply when their taxicabs provide Blue Car service.

Dial A Car argues that Order No. 4 still applies to regular taxicabs when they purport to provide Blue Car service, or at least that, if the taxicabs are providing Blue Car service, they must be licensed as Blue Cars subject to a different set of regulations, which appellees' taxicabs are not. Appellant alleges that, by using regular taxicabs to provide Blue Car service in violation of Order No. 4, appellees can offer lower prices than Dial A Car. Therefore, according to appellant, the violation is a form of predatory conduct intended to drive Dial A Car out of business and to monopolize Blue Car service in violation of the Sherman Act. Appellant also claims that Red Top and Barwood are violating the Lanham Act by misrepresenting to Dial A Car's actual and potential corporate account customers that their taxicabs can legally provide within the District the same Blue Car service as Dial A Car.

## B. *Proceedings Before the District Court*

After Red Top filed a motion to dismiss and Barwood moved for judgment on the pleadings, Dial A Car attempted to submit a declaration from the D.C. Taxicab Commission's General Counsel. The declaration stated the General Counsel's belief that Order No. 4 applies to "all operations of taxicabs licensed in jurisdictions other than the District of Columbia ... regardless of the method of payment or means of dispatch." Decl. of George W. Crawford ¶ 6, *reprinted in* Joint Appendix ("J.A.") 54, 55. The District Court refused to consider the declaration, however, deciding instead that the motions to dismiss "can and should be resolved on the basis of the complaint." *Dial A Car, Inc. v. Transportation, Inc.*, Civ. Action No. 93–2170, 1994 WL 902774, slip op. at 2 (D.D.C. Sept. 8, 1994) (Order Denying Plaintiff's Motion for Leave to File Supplemental Material), *reprinted in* J.A. 68, 69.

Following oral argument, the District Court granted appellees' motions and dismissed Dial A Car's complaint in its entirety. *Dial A Car, Inc. v. Transportation, Inc.*, 884 F.Supp. 584, 593 (D.D.C.1995). The court first dismissed the Sherman Act claim on the grounds that Dial A Car had failed to show any antitrust injury or to allege facts sufficient to establish the essential elements of an attempted monopolization claim, namely, a specific intent to destroy or control competition and a dangerous probability of successful monopolization. The District Court then dismissed appellant's Lanham Act claim because the alleged false representations of fact were merely opinions as to the legality of appellees' activities under D.C. regulations. The court ruled that the D.C. Taxicab Commission had not yet resolved the question of whether taxicabs otherwise unlicensed in D.C. can be used to provide Blue Car service, and that, therefore, appellant's Lanham Act claim was not cognizable.

## II. ANALYSIS

### A. *The Sherman Act Claim*

■ Dial A Car claims that Red Top and Barwood are illegally attempting to monopolize the market for Blue Car service within the District of Columbia, in violation of section 2 of the Sherman Act.[1] However, a plaintiff claiming federal antitrust violations must plead and prove "more than injury causally linked to an illegal presence in the market." *Brunswick Corp. v. Pueblo Bowl–O–Mat, Inc.*, 429 U.S. 477, 489, 97 S.Ct. 690, 697, 50 L.Ed.2d 701 (1977). Because the antitrust laws "were enacted for 'the protection of *competition*, not *competitors*,'" *id.* at 488, 97 S.Ct. at 697 (quoting *Brown Shoe Co. v. United States*, 370 U.S. 294, 320, 82 S.Ct. 1502, 1521, 8 L.Ed.2d 510 (1962)), appellant must allege facts that would show an anticompetitive impact on the market as a whole.

■ The District Court found that Dial A Car had pleaded no facts that would show that appellees' conduct was anticompetitive. Indeed, the introduction of both Barwood and Red Top into the market (whether legal or not) would appear to be fostering competition, rather than reducing it. While Dial A Car alleges injury to itself, that injury in-

---

1. 15 U.S.C. § 2 (1994) states: "Every person who shall monopolize, or attempt to monopolize, or combine or conspire with any other person or persons, to monopolize any part of the trade or commerce among the several States, or with foreign nations, shall be deemed guilty of a felony...."

volves only one specific competitor and is insufficient to support a finding that the market as a whole is or will be injured.

Appellant argues that its complaint goes beyond alleging only a competitive injury to itself because the complaint also alleges that, "if and when they succeed in eliminating Plaintiff as a competitor in the Relevant Market ... Defendants intend to replace their illegal low-priced Relevant Market service by Regular Taxicab with their own, lawful, higher-priced Blue Car Relevant Market services, without fear of competition." Compl. at ¶ 39c, *reprinted in* J.A. 1, 13. Thus, appellant analogizes appellees' behavior to a predatory pricing case, where a party initially increases competition, but only to drive competitors out of the market and achieve monopoly power.

Although the complaint offers no evidence that appellees have such a plan, appellant argues that, at this stage in the proceedings, it need only provide a " 'short and plain statement of the claim showing that the pleader is entitled to relief.' " Brief of Appellant at 6 (quoting FED.R.CIV.P. 8(a)(2)). However, although Dial A Car is correct that motions to dismiss antitrust claims "should be granted very sparingly," *Hospital Bldg. Co. v. Trustees of Rex Hosp.*, 425 U.S. 738, 746, 96 S.Ct. 1848, 1853, 48 L.Ed.2d 338 (1976), in this case, appellant not only fails to allege any facts supporting its claim that appellees eventually plan to wield monopoly power, it also offers nothing to indicate that monopolization of the relevant market is even possible, let alone probable, *see Spectrum Sports, Inc. v. McQuillan*, 506 U.S. 447, 456, 113 S.Ct. 884, 890–91, 122 L.Ed.2d 247 (1993) (A claim of attempted monopolization must show that defendants have "engaged in predatory or anticompetitive conduct with ... a specific intent to monopolize and ... [have] a dangerous probability of achieving monopoly power.").

▪ Predatory pricing claims, because they are premised on a temporary increase in competition, inherently ask the court to penalize potentially beneficial conduct. *See Cargill, Inc. v. Monfort of Colorado, Inc.*, 479 U.S. 104, 122 n. 17, 107 S.Ct. 484, 495 n. 17, 93 L.Ed.2d 427 (1986) ("[T]he mechanism by which a firm engages in predatory pricing— lowering prices—is the same mechanism by which a firm stimulates competition....."). Therefore, plaintiffs must establish that the defendant's alleged predatory conduct actually threatens to harm rather than to advance the cause of competition. *See Brooke Group, Ltd. v. Brown & Williamson Tobacco Corp.*, 509 U.S. 209, 223–26, 113 S.Ct. 2578, 2588–89, 125 L.Ed.2d 168 (1993). A plaintiff must show, first, that the defendant would be able to achieve a monopoly position in the relevant market, and, second, that it could sustain that position after it wields its power and raises prices, or, as Dial A Car argues here, substitutes higher-priced luxury sedans for lower-cost taxicabs. *See id.* at 225–26, 113 S.Ct. at 2589.

Appellant's complaint satisfies neither of these requirements. As the District Court held:

> [Appellant] has failed to allege any facts showing that [appellees] have the kind of actual or probable market power necessary to exclude competition generally from the market or to force Dial A Car out of the market. Dial A Car has failed even to allege any facts demonstrating that the market is capable of being monopolized, what market share of the Corporate Account Service business [appellees] possess, or any facts concerning [appellees'] market positions relative to other market participants.

884 F.Supp. at 590–91. Dial A Car's own complaint acknowledges that there are multiple Blue Car service providers in competition with appellees, and there is no reasonable basis for believing that all other competitors for on-call, point-to-point transportation will be driven out of business.[2] Indeed, since Dial A Car is not alleging a conspiracy in restraint of trade, Barwood and Red Top would presumably compete with each other,

---

2. We note that, although appellees' alleged anticompetitive activity, according to the complaint, dates back at least to 1990, *see* Compl. at ¶ 41, *reprinted in* J.A. 14, no facts have been alleged to indicate that *any* company (including Dial A Car) is even close to being driven from the Blue Car market. This hardly indicates a dangerous probability of successful monopolization.

and there is no allegation that either company could or would achieve the monopoly on which a section 2 claim must be predicated.

Even if there were a likelihood that either Barwood or Red Top could achieve monopoly power through low-priced services, there is no basis for believing that either company could sustain its monopoly once it raised prices. The complaint alleges that, after Dial A Car's elimination from the market, appellees intend to replace their taxicabs with luxury sedans and operate "without fear of competition." Yet, by appellant's own admission, there are other taxicab and Blue Car providers poised to take business away from any company attempting to exercise monopoly power by raising rates. Any of these companies would be free to offer lower prices as soon as either or both appellees raised theirs. Equally important, appellant's complaint does not allege any barriers that would prevent entry into the market by any number of additional providers. *See United States v. Baker Hughes Inc.*, 908 F.2d 981, 987 (D.C.Cir.1990) ("In the absence of significant barriers [to entry], a company probably cannot maintain supracompetitive pricing for any length of time.").

While the Supreme Court has indicated that courts should be reluctant to dismiss antitrust claims because the relevant facts are often in the possession of the defendant, *see Hospital Bldg. Co.*, 425 U.S. at 746, 96 S.Ct. at 1853, in this case such solicitude is not warranted. Evidence regarding the market as a whole is surely as available to Dial A Car as it would be to Red Top and Barwood. Therefore, since Dial A Car did not allege any factual basis for a legitimate claim under section 2 of the Sherman Act, the District Court properly granted appellees' motions to dismiss. *See Brooke Group*, 509 U.S. at 226, 113 S.Ct. at 2589 ("In certain situations—for example, where the market is highly diffuse and competitive, or where new entry is easy ... summary disposition of the case is appropriate.").

## B. *The Lanham Act Claim*

■ We also reject appellant's Lanham Act claim. The Lanham Act imposes liability on "[a]ny person who ... uses in commerce any ... false or misleading description of fact, or false or misleading representation of fact, which ... in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities." 15 U.S.C. § 1125(a)(1)(B) (1994). Cases interpreting the Lanham Act have imposed a five-prong test to determine liability, *see, e.g., ALPO Petfoods, Inc. v. Ralston Purina Co.*, 913 F.2d 958, 963–64 (D.C.Cir.1990), but it is only the first prong—whether the advertising was false or misleading—that is at issue here. The key question, therefore, is whether appellees' representations that they are permitted to provide the taxi service at issue qualifies as a false or misleading statement of fact for Lanham Act purposes.

Dial A Car claims that appellees misrepresented to Blue Car customers that their taxicabs were authorized to provide the same corporate account services as Dial A Car provides. Appellant maintains that Order No. 4 clearly prohibits Barwood and Red Top from using regular taxicabs to provide Blue Car service in the District and that any representation to the contrary is therefore a false statement of fact. The District Court disagreed with appellant's interpretation of the Commission's order, observing that "it is not even clear on the face of ... Order No. 4 that it applies to transportation services of the kind Red Top and Barwood are alleged to have provided in the District of Columbia." 884 F.Supp. at 592.

We need not resolve this question of statutory construction, however, because, no matter which view is right, there is no dispute that such a question is within the jurisdiction of the D.C. Taxicab Commission. There is also no dispute that the Commission has not addressed, in an adjudication or any other formal ruling, whether appellees' provision of Blue Car service using regular taxicabs does indeed violate Order No. 4. Thus, it appears that appellant is simply using the Lanham Act to try to enforce its preferred interpretation of Order No. 4 instead of adjudicating the issue before the Commission. We reject such a gambit because we see no reason to reach out and apply federal law to this quin-

tessentially local dispute, and neither appellant nor our dissenting colleague cites to any Supreme Court or federal appellate decision that authorizes us to do so. In short, it would be unthinkable for a federal court to suggest that a regulated taxicab company can be held liable under the Lanham Act for failing to anticipate the *court's* subsequent interpretation of a municipal regulation. Rather, we hold that, at a minimum, there must be a clear and unambiguous statement *from the Taxicab Commission* regarding appellees' status before a Lanham Act claim can be entertained.[3]

Moreover, even if appellant were to persuade the Commission to issue such a clear statement, this would still not show that the law was clear at the time appellees made the alleged misstatements. In other words, appellant cannot pursue this lawsuit with a simple assertion that *current* D.C. law is seen to be clear and unambiguous, based on an interpretation by the D.C. Taxicab Commission that was issued subsequent to appellees' statements. Rather, the proper inquiry is whether the law was unambiguous *at the time appellees' alleged misstatements were made.*[4]

The Third Circuit has rejected a Lanham Act claim in an analogous case, where the plaintiff sought to rest its action on an alleged violation of regulations issued pursuant to the Food, Drug and Cosmetic Act. *See Sandoz Pharmaceuticals Corp. v. Richardson–Vicks, Inc.,* 902 F.2d 222, 230–32 (3d Cir.1990). In *Sandoz,* the plaintiff claimed that Vicks had falsely listed an ingredient in its cough formula as "inactive" even though the ingredient enabled the supposedly "active" ingredients to work faster. Sandoz argued that, as a matter of common sense, if the ingredient in question helped to relieve coughs in any way, it must be considered an active ingredient for labeling purposes. The Third Circuit rejected Sandoz's Lanham Act claim, however, stating that "[s]uch an interpretation of FDA regulations, absent direct guidance from the promulgating agency, is not as simple as Sandoz proposes." *Id.* at 230. The court refused to find " 'as a matter of common sense' or 'normal English,' that which the FDA, with all of its scientific expertise, has yet to determine." *Id.* at 231. Most importantly, the court explicitly rejected "the theory that it is appropriate for a court in a Lanham Act case to determine preemptively how a federal administrative agency will interpret and enforce its own regulations." *Id.* According to the court, Sandoz's position would require it "to usurp administrative agencies' responsibility for interpreting and enforcing potentially ambiguous regulations." *Id.* Noting that neither the Food, Drug and Cosmetic Act nor the Federal Trade Commission Act provides a private right of action, the court concluded that what those statutes "do not create directly, the Lanham Act does not create indirectly, at least not in cases requiring original interpretation of these Acts or their accompanying regulations." *Id.*

The same considerations that led the Third Circuit to reject the claim in *Sandoz* control

---

**3.** We agree with the dissent that, hypothetically speaking, a regulation might conceivably be drafted that would be so clear on its face that no good faith doubt concerning its interpretation would be possible, even without an explicit statement from the Taxicab Commission. However, given that Order No. 4 does not even address the issue of Blue Car service, we have no trouble finding that the regulatory framework in this case is, at the very least, ambiguous with regard to the legality of appellees' activity. Indeed, we note that, although our dissenting colleague interprets Order No. 4 one way, the trial judge, viewing the same regulation, suggested that his reading of the statute might well be exactly the opposite, *see Dial A Car,* 884 F.Supp. at 592 ("[I]t is not even clear on the face of … Order No. 4 that it applies to transportation services of the kind Red Top and Barwood are alleged to have provided in the District of Columbia."). In

light of this disagreement, we certainly cannot say that the regulation was so clear as to be a fact for Lanham Act purposes.

**4.** Although appellant did submit a supporting declaration of the General Counsel in an attempt to establish that appellees' activities were proscribed under Order No. 4, this declaration merely stated the opinion of the author and did not purport to speak for the Commission. Further, although the declaration refers to citations and warnings issued to Red Top and Barwood by the Commission, there is no claim that the citations or warnings were issued in regard to appellees' provision of *Blue Car* service, which is the interpretive question at issue in this case. Thus, we find that the trial court acted within its discretion in refusing to consider the declaration.

here. By entertaining appellant's claim, we would be transforming the Lanham Act into a handy device to reach and decide all sorts of local law questions. Not surprisingly, although the Act has been interpreted in literally hundreds of appellate cases since its enactment in 1946, we cannot find a single case that purports to extend the Act to allow federal judges to interpret and *enforce* municipal regulations, thereby affording plaintiffs remedies over and above those provided by local law.

Instead of bringing this claim in federal court, appellant should be forced to take its argument to the D.C. Taxicab Commission and lobby the Commission to crack down on appellees' activities, assuming they are proscribed under Order No. 4. If the Commission truly considers the meaning of Order No. 4 to be "obvious," as our dissenting colleague suggests, Dissent at 5, then Dial A Car should easily be able to obtain redress. However, to use the Lanham Act as a backdoor method of prosecuting this case in federal court is completely unwarranted.

### III. CONCLUSION

For the foregoing reasons, the judgment of the District Court, dismissing appellant's claims, is affirmed.

*So ordered.*

HARRY T. EDWARDS, Chief Judge, separately concurring:

Although we need not reach the question to dispose of this case, I write separately to express my doubts about whether appellant could prevail on a Lanham Act claim *even if* the D.C. Taxicab Commission had issued a clear statement regarding appellees' legal status prior to the alleged misstatements of fact.

I am not convinced that the Lanham Act was enacted to impose penalties, over and above what local law allows, for infringements of routine municipal regulations. Indeed, one might imagine that the local authorities, who have primary jurisdiction over enforcement of the local taxicab regulations, might decide (for any of a number of reasons) that certain types of violations ought

not be prosecuted. In such circumstances, I do not believe it is within the province of a federal court, under the guise of the Lanham Act, to preempt the decisions of local authorities by allowing an action in federal court that local authorities decline to pursue.

The federal courts have developed the doctrine of primary jurisdiction to promote "'proper relationships between the courts and administrative agencies charged with particular regulatory duties.'" *Nader v. Allegheny Airlines, Inc.,* 426 U.S. 290, 303, 96 S.Ct. 1978, 1986, 48 L.Ed.2d 643 (1976) (quoting *United States v. Western Pacific R.R. Co.,* 352 U.S. 59, 63, 77 S.Ct. 161, 164–65, 1 L.Ed.2d 126 (1956)). Accordingly, we have stated that a federal court should refrain from deciding an issue if an agency "is best suited to make the initial decision on the issues in dispute." *Allnet Communication Serv., Inc. v. National Exch. Carrier Ass'n,* 965 F.2d 1118, 1120 (D.C.Cir.1992); *see also McKart v. United States,* 395 U.S. 185, 194, 89 S.Ct. 1657, 1663, 23 L.Ed.2d 194 (1969) (Because "agency decisions are frequently of a discretionary nature or frequently require expertise, the agency should be given the first chance to exercise that discretion or to apply that expertise."). The primary jurisdiction doctrine properly acknowledges "the advantages of allowing an agency to apply its expert judgment," and also recognizes that this expertise does not merely involve issues of technical complexity, "but extends to the policy judgments needed to implement an agency's mandate." *Allnet,* 965 F.2d at 1120.

Although these important prudential considerations have evolved in the context of *federal* administrative agency decisions, there would appear to be even less justification for a federal court to interpret *municipal* regulations that have been entrusted to a local agency to administer. I find it hard to believe that one of the purposes of the Lanham Act is to permit such an intrusion into local governance, and I am not in the least surprised that there is no authority supporting such a view.

SILBERMAN, Circuit Judge, concurring in part and dissenting in part:

I agree with the majority that the district court appropriately dismissed Dial A Car's

Sherman Act claim. But I think the district court erred in dismissing appellant's Lanham Act claim.

Dial A Car's central contention is that Order No. 4 applies to appellees' provision of Blue Car service with taxicabs. Licensing is an affirmative requirement; if not licensed to do business as Blue Cars, subject to a different set of regulations, the taxicabs must be licensed as and must function as taxicabs.[1] Dial A Car alleges—and it is not squarely disputed—that the Commission has issued citations under the Order to appellees for providing Blue Car service with taxicabs, precisely the conduct at issue here. And it attempted to submit an affidavit from the D.C. Taxicab Commission's General Counsel, who advises the Commission on the proper interpretation and application of D.C. taxicab regulations, stating that Order No. 4 applies to cars licensed as taxicabs regardless of the type of service provided. Given the Order's clear terms and this regulatory structure, it is argued, appellees' representations to customers that they are authorized to provide the full range of Blue Car service with their taxicabs (at lower prices, of course) were verifiably "false or misleading representation[s] of fact" under the Lanham Act.

Appellees respond that at best the Order's application is ambiguous; it does not on its face cover this situation, and there is no ruling on the issue from the Commission, the authority that can most appropriately resolve such a question. The federal district court should therefore refuse to decide such an ambiguous local law issue. And given this ambiguity, appellees' representations are at most "opinions" on their lawful ability to provide services. Appellant therefore cannot possibly show that any representations appellees made were "verifiably false representations of fact," and the complaint was properly dismissed.

The district court agreed with appellees. I think the district court erred, however, largely because it failed to examine closely the Order's language and the regulatory context.

Order No. 4 states that "[t]he following rules shall govern the conduct of operators of *Maryland and Virginia licensed taxicabs* in the District" (emphasis added). As Dial A Car contends, the Order's language indicates that it is the type of *license* that is determinative, not the provision of a particular type of *service*. But even assuming this wording does not clearly cover taxicabs providing Blue Car service—which I think it does—there are separate licensing provisions and regulations for Blue Cars, the existence of which the district court did not even address. If, as appellees argued and the district court accepted, taxicabs providing Blue Car service are no longer taxicabs, the rather obvious implication of the regulatory structure is that they must be Blue Cars, licensed and regulated as such. Appellees do not concede, however, that upon providing Blue Car service, their cabs become Blue Cars subject to applicable requirements; instead, they appear to claim that their cabs float in a regulatory limbo, not subject to *any* requirements. But this "position" contravenes the apparent purpose of the D.C. Code and the Commission affirmatively to require licensing for all types of transportation services in the District. Thus, the plain import of the language and regulatory structure is that Order No. 4 applies to appellees' conduct.

The district judge also accepted appellees' argument that their representations were "opinions" rather than verifiable "facts" and therefore not within the Lanham Act. Accordingly, appellees contend, before us, that it does not matter whether the district judge misread local law—any question that calls for a legal conclusion cannot be a statement of fact for purposes of the Lanham Act. And it would be particularly inappropriate, in their view, for a federal district court to resolve a disputed issue of local law, indirectly, in the context of a Lanham Act suit. I readily agree that, if whether appellees are authorized to use taxicabs to provide Blue Car service in D.C. really is in doubt, appellees' representations cannot serve as a basis for this suit. But I am unwilling to conclude

---

**1.** "No person ... shall operate a taxicab ... or taxicab service within the District without first procuring all applicable licenses required by the Commission." "Operate" includes "taxicab ser-

vice of any type which physically originates in the District." D.C.Code Ann. § 40–1719(a) (1990).

that any such statement can never be a factual representation. After all, even to state that one is an American citizen draws upon certain legal conclusions; in some situations that might be doubtful, but in most others, it will be a clear statement of truth or falsity. Whether a statement of purported fact that depends on an underlying legal conclusion is a fact for Lanham Act purposes, therefore seems to me to depend for its character as fact on whether there can be a good faith doubt as to the legal conclusion (which is essentially the same question as whether a defendant "knowingly" violated local law).

The majority agrees, "hypothetically speaking," with my good faith doubt approach, but expresses skepticism that a regulation could ever be sufficiently clear to support such a claim. *See Maj.Op.* at 489 n. 3. As such, the majority's ostensible agreement is an illusion. And that is made abundantly clear by the majority's assertion that merely because the district judge read local law differently than do I (the appellees, and the Commission's General Counsel), the law must be ambiguous—even though the majority does not endorse the district judge's "analysis" or submit an alternative plausible reading. Of course, if the fact that one judge (or agency) misread a statute was a *per se* indication of the statute's ambiguity, our implementation of *Chevron*—particularly when considering a district court's review of an agency interpretation of a statute—would be revolutionized. I do not see how, therefore, the majority's approach to this case could possibly embody a principle for the Lanham Act or indeed any other kind of case.

The majority's resistance to recognition of a Lanham Act claim appears to stem from its unwillingness to apply federal law to a local dispute. It emphasizes that this dispute is within the Taxicab Commission's jurisdiction—which the majority assumes has not yet resolved the issue. I share the majority's concern that the Lanham Act should not be used as "a handy device to reach and decide all sorts of local law questions," *Maj.*

*Op.* at 490, but that concern dissipates when state or local law is clear. The majority has given no justification for what in effect is an absolute bar to Lanham Act claims based on local law.[2] While the majority notes that the Lanham Act apparently has not been applied previously to a misrepresentation based on state or local law, the Act does not on its face draw this distinction. It is strange, to say the least, to consider a statement of federal authorization, *e.g.*, copyright ownership, to be a misrepresentation of fact actionable under the Lanham Act, but a similar statement of local authorization to be a non-actionable opinion. And although it is possible for the District's legal/regulatory structure to give the Commission exclusive authority vis-a-vis any court, federal or local, to enforce the D.C. Code and its orders, this is not clearly stated in the statute or regulations nor addressed by the majority. *Cf.* National Labor Relations Act, 29 U.S.C. § 153(d) (1994) (vesting "final authority" for issuing and prosecuting complaints with the General Counsel of the National Labor Relations Board). Nevertheless, the majority relies on *Sandoz Pharmaceuticals Corp. v. Richardson–Vicks, Inc.*, 902 F.2d 222 (3d Cir.1990), a "primary jurisdiction" case, to explain its refusal to apply the Act. The rationale of primary jurisdiction is that a court should not *preemptively* decide an issue for which another agency or court has primary responsibility and that implicates agency expertise, policy issues, or exclusive agency jurisdiction. Thus, in *Sandoz*, the court refused to decide a complex, scientific issue—whether a cough syrup demulcent that hastens the effect of the other (active) ingredients is itself an active rather than an inactive ingredient—that the Food & Drug Administration had not yet addressed. The court noted that the petitioner was free to pursue its false labeling claim with the FDA, and refused to "preemptively" decide an issue that the FDA should decide "as an original matter." *Id.* at 231–32 & n. 10.

---

2. The majority misstates the case when it repeatedly refers to the relevant issue as the *application* of federal law to a local dispute, *see Maj. Op.* at 488, 490; this is not enforcing local law but rather applying federal law, according to its terms, to factual misrepresentations that happen in this instance to stem from local law.

In *Sandoz,* however, in contrast to the present case, the court thought the law unclear, and there had been no indication from the agency of the appropriate interpretation. And the FDA presumably could investigate, at petitioner's request, the alleged labeling violations. Here, a careful examination of the Order's language and the regulatory scheme shows the law is clear. And Dial A Car alleged squarely that the Commission has issued citations on precisely the conduct at issue. Further, there is no suggestion that the Commission, like the FDA, is authorized to entertain false advertising claims. The actual violation of the taxicab regulations, for which the Commission may issue (random) citations, is distinct from the false advertising that Dial A Car seeks to remedy in its Lanham Act claim, over which the federal court appropriately has jurisdiction. To tell Dial A Car to raise its claim with the Commission, as the majority suggests, is thus not only unnecessary; it is an empty solution. Appellants brought the Lanham Act claim because, as they have explained, the Commission does not have the institutional powers or resources effectively to prevent Barwood and Red Top from flouting the D.C. statute.

The majority insists (footnote three's concession on the good faith doubt rule notwithstanding) that only a formal statement from the Commission on Order No. 4 is an acceptable indication of its meaning. But there is no Commission interpretive rule requiring such a formal statement, and perhaps none has issued because the Commission considers the Order's meaning obvious. If a statement of the Commission were thought necessary or desirable, I do not understand why the General Counsel's affidavit is inadequate. There is simply no excuse for the district judge's refusal to even examine that document. The court stated only that it was "of the view that [the motion to dismiss] can and should be resolved on the basis of the complaint, without reference to the Declaration sought to be filed by Plaintiff as supplemental material." *See Dial A Car, Inc. v. Transportation, Inc.,* Civ. Action No. 93–2170, 1994 WL 902774, Mem.Op. at 2 (D.D.C. Sept. 8, 1994). The majority suggests that the district judge had "discretion" in deciding whether to accept the affidavit. But the judge's discretion on a FED.R.CIV.P. 12(b)(6) motion to dismiss extends only to whether to accept evidentiary or factual submissions that would convert the motion into one for summary judgment under Rule 56. Submissions on legal issues, as is the affidavit here, are not within that discretion.

The affidavit stated that the General Counsel "advise[s] the Commission as to the legality and proper interpretation of its rules, regulations, orders and rulings." Crawford Aff. 1. The district court did not state that it was rejecting the affidavit because the General Counsel did not purport to speak for the Commission, as the majority suggests, *see Maj.Op.* at 489 n. 4, and given his role vis-a-vis the Commission, the General Counsel apparently is authorized to give an authoritative interpretation. He averred that

> [t]here is not now, and never has been, any question that all operations of taxicabs licensed in jurisdictions other than the District of Columbia must conform to Administrative Order No. 4 ... regardless of the method of payment or means of dispatch, and there is no exception for trips made pursuant to established "Corporate Account" billing.

*Id.* Moreover, if appellant proved that the Commission citations issued to Red Top and Barwood were specifically directed to the alleged providing of illegal Blue Car service, that also would support that Order No. 4 applies to the disputed services and that appellees were in fact aware that their conduct was illegal. That information is clearly significant and relevant to the Order's meaning, and therefore to whether Dial A Car has a viable Lanham Act claim.

Since I think Order No. 4 clear, on its text and regulatory context alone (and certainly in light of Dial A Car's supporting material), I would determine that the district court's refusal to consider the material submitted by Dial A Car and its subsequent dismissal of the case with prejudice were erroneous.