**POTOMAC ELECTRIC POWER COMPANY to its own use and to the use of Royal Indemnity Company**

**and**

**Maryland Casualty Company, Plaintiffs,**

**v.**

**The BABCOCK & WILCOX COMPANY et al., Defendants.**

**Civ. No. 71–1144.**

United States District Court,
D. Maryland.

March 7, 1972.

William B. Somerville, Douglas G. Worrall and Smith, Somerville & Case, Baltimore, Md., for plaintiffs.

George M. Radcliffe, Barrett W. Freedlander and Niles, Barton & Wilmer, Baltimore, Md., for defendants Combustion Engineering, Inc. and Air Preheater Co., Inc.

Donald E. Sharpe, Raymond J. Coughlan, Jr., and Piper & Marbury, Baltimore, Md., for defendant The Babcock & Wilcox Co.

HARVEY, District Judge:

In this civil action, motions to dismiss filed by the defendants raise various interesting questions concerning the applicability of Rules 17, 19 and 21 of the Federal Rules of Civil Procedure to the parties plaintiff, an insured and its two insurers. Suit has been brought by Potomac Electric Power Company (Pepco) to its own use and to the use of Royal Indemnity Company (Royal) and Maryland Casualty Company (Maryland Casualty), as plaintiffs, against The Babcock & Wilcox Company (Babcock), Combustion Engineering, Inc. (Combustion) and Air Preheater Company, Inc. (Apco), as defendants. Diversity jurisdiction has been alleged.

Insofar as jurisdiction is concerned, it is alleged, *inter alia*, that Royal is organized under the laws of the State of New York and has its principal office in New York City.[1] It is further alleged that all three defendants have principal offices at different locations in the State of New York. Noting these allegations, Combustion and Apco promptly filed a motion to dismiss this action for lack of jurisdiction over the subject matter, claiming incomplete diversity insofar as the plaintiffs are concerned.[2]

Pepco thereupon filed a motion to drop the use plaintiffs Royal and Maryland Casualty under Rule 21, conceding that their presence in the suit as use plaintiffs raised serious questions concerning the jurisdiction of this Court but claiming that such use plaintiffs were not indispensable parties in this action. Of course, if Royal and Maryland Casualty may be dropped as parties plaintiff, no diversity problem arises.[3] However, defendants have opposed plaintiffs' Rule 21 motion, relying on Rules 17 and 19. The Court therefore is compelled to determine whether either of these Rules requires the joinder of the insurers in this action. In view of the inter-relationship of the defendants' motions to dismiss and the plaintiffs' Rule 21 motion, they have all been heard at the same time.

After the motions in question were filed, plaintiffs, following a conference with the Court attended by counsel for

1. It is agreed that "principal office" was intended as "principal place of business," pursuant to 28 U.S.C. § 1332(c).

2. The defendant Babcock later joined in this motion. In addition all three defendants have filed motions to dismiss based on other grounds. It has been agreed that the jurisdictional question will be decided before any of the other motions are considered.

3. It is the presence of Royal as a use plaintiff which creates the jurisdictional issue. However, for the sake of consistency the Rule 21 motion sought to drop both insurers as use plaintiffs.

all parties, instituted an action identical with the present one against the same defendants in the Circuit Court for Baltimore County. Defendants have represented that there are no jurisdictional or venue questions present in that action, and defendants urge that the claims presented here should be litigated in the state suit rather than in this Court.

## The Complaint

For a proper understanding of the status of Royal and Maryland Casualty as parties to this action, the allegations of the complaint must be here considered.[4] Pursuant to an agreement between the two parties, Babcock undertook to supply steam generating units to Pepco, a utility company located in the District of Columbia which supplies electric service throughout the Washington metropolitan area. Babcock employed a firm known as Air Preheater Corporation to design and manufacture four secondary air heaters needed for the steam generating units. The latter corporation subsequently merged into Combustion, and thereafter Apco was formed as a subsidiary of Combustion to assume the obligations to Babcock insofar as the secondary air heaters were concerned. The steam generating units were later completed and placed in operation, and Apco provided periodic inspection and maintenance for the air heaters.

On or about January 31, 1969, one of the secondary air heaters ceased functioning. Subsequent investigation revealed that all four air heaters were deficient in design, manufacture and installation. Costly repairs were required, and attendant loss of use of the generating equipment caused additional expense. At the time of the matters in suit, there was in effect an insurance policy issued by Royal to Pepco, covering extra expenses and business interruption arising from equipment failure

at the generating station in question. There was also in effect an insurance policy issued by Maryland Casualty covering direct losses to equipment located at such station. Some $697,000 was spent to replace the defective part which actually failed, of which some $431,000 was paid by Maryland Casualty. Some $158,000 was spent to expedite the work, most of which was paid by Royal but some of which was paid by Maryland Casualty. Damages in the amount of some $1,660,000 were suffered by Pepco because the generators could not be used during the period of the repairs, of which some $602,000 was paid by Royal. Some $672,000 was spent to repair three other defective parts, of which no portion was paid by Pepco's insurers.

In Count 1 of the complaint, the plaintiffs seek damages against all three defendants because of negligence in the design, manufacture, installation and servicing of the parts in question. Count 2 demands a judgment against Babcock alone because of an alleged violation of an implied warranty of fitness. Count 3 seeks damages against Apco alone for failure to maintain and repair the air heaters as agreed. In each count, the plaintiffs demand judgment "as their interests may appear" against the defendant or defendants therein named in the amount of $5,000,000 with interest and costs.

## The Questions

■ Under these facts, this Court is called upon to determine whether either Rule 17 or Rule 19 requires the joinder of insurers Royal and Maryland Casualty. If the insurers must be joined under either Rule (in the language of Rule 19(b), if they should be regarded as "indispensable"), then plaintiffs' Rule 21 motion must be denied and this action must be dismissed because of a failure

4. No answers have been filed by any of the defendants, and the facts set forth here-

in are those that have been pleaded in the complaint.

of complete diversity of citizenship.[5] On the other hand, if these insurers are not required by either Rule to be joined in this action, then plaintiffs' Rule 21 motion must be granted and the motions to dismiss denied.[6]

## Discussion

■ Little difficulty is presented by the preliminary question presented under Rule 17, namely, whether the insurers are real parties in interest. Rule 17(a) states: "Every action shall be prosecuted in the name of *the* real party in interest." (Emphasis added) Professor Moore has interpreted this Rule to mean that every action shall be prosecuted in the name of the party who, by the substantive law, has the right to be enforced. 3A Moore's Federal Practice, ¶ 17.02, p. 53 (2d ed.).

■ An insurer which has paid for a loss in whole or part becomes subrogated to the rights of the insured as holder of the claim and stands in the shoes of such subrogor. General Cigar Co. v. Lancaster Leaf Tobacco Company, 323 F.Supp. 931 (D.Md.1971). In United States v. Aetna Casualty and Surety Company, 338 U.S. 366, 70 S.Ct. 207, 94 L.Ed. 171 (1949), the Supreme Court held that an insurer-subrogee is a real party in interest under Rule 17. The Court noted that if the subrogee had paid the entire loss, it would be the only real party in interest and must then sue in its own name. (at 380, 381, 70 S.Ct. 207, 94 L.Ed. 171) The Court further observed that in cases of partial subrogation, both the insured and the insurer "own" portions of the substantive right, are real parties in interest and should appear in the litigation in their own names. (at 381, 70 S.Ct. 207, 94 L.Ed. 171)

Here, both Pepco and its insurers own portions of the substantive right, and all three parties are real parties in interest which should be named as plaintiffs in this litigation, unless considerations arising under Rule 19 require otherwise.[7] The insurers here have paid the loss in part only, and if recovery were effected in full, part would go to Pepco and part to the insurers.

The record here indicates that Royal paid the loss it insured under a "loan receipt" agreement. Although characterizing the payment as a loan, such agreement provided that Royal would pay for and would have "exclusive direction and control" of any suit such as the present one to recover for the loss. Officers of Royal were appointed as agents and attorneys in fact "with irrevocable power" to collect any claim resulting from such loss.

A payment conditioned on such control by an insurance company and its attorneys of a subsequent suit hardly amounts to a bona fide loan so as to avoid the requirements of Rules 17 and 19. Under an agreement between an insured and its insurer such as the one here present, this Court concludes that the insurer is subrogated to the rights of the insured to the extent that it has paid portions of the loss in question. City Stores Co. v. Lerner Shops, 133 U.S.App.D.C. 311, 410 F.2d 1010 (1969); Wright & Miller, Federal Practice and Procedure, § 1546, pp. 658–659; see Neighbours v. Harleysville Mutual Casualty Co., 169 F.Supp. 368 (D.Md.1959).

---

5. If a party is indispensable, he cannot be dropped so as to create complete diversity of citizenship between plaintiffs and defendants. Eastern Metals Corp. v. Martin, 191 F.Supp. 245, 253 (S.D.N.Y. 1960).

6. Rule 21 in pertinent part provides:
    "Misjoinder of parties is not ground for dismissal of an action. Parties may be dropped or added by order of the court on motion of any party or of its own initiative at any stage of the action and on such terms as are just."

7. Of course, the insurers were in fact originally named as plaintiffs in the complaint, and the question before the Court in this case is whether they should be dropped.

But answering the preliminary Rule 17 question posed in this case does not resolve the issues here. The fact that both the insurers and the insured *should* be joined as real parties in interest does not mean (as argued by defendants) that they *must* be joined for that reason, if the effect of joining such a party would be dismissal of the action because diversity was destroyed. See Virginia Electric & Power Co. v. Carolina Peanut Co., 186 F.2d 816 (4th Cir. 1951). In the latter event, the facts must be considered in the light of Rule 19. An action will not be dismissed if joinder of a party otherwise necessary would destroy diversity, unless under the provisions of Rule 19 it is determined that such party should be regarded as "indispensable." Provident Tradesmens Bank & Trust Co. v. Patterson, 390 U.S. 102, 108–109, 88 S.Ct. 733, 737, 19 L.Ed. 2d 936 (1968).

In its present form, Rule 19 provides in pertinent part as follows:

"(a) Persons to be Joined if Feasible. A person who is subject to service of process and whose joinder will not deprive the court of jurisdiction over the subject matter of the action shall be joined as a party in the action if (1) in his absence complete relief cannot be accorded among those already parties, or (2) he claims an interest relating to the subject of the action and is so situated that the disposition of the action in his absence may (i) as a practical matter impair or impede his ability to protect that interest or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of his claimed interest. If he has not been so joined, the court shall order that he be made a party. If he should join as a plaintiff but refuses to do so, he may be made a defendant, or, in a proper case, an involuntary plaintiff. If the joined party objects to venue and his joinder

would render the venue of the action improper, he shall be dismissed from the action.

"(b) Determination by Court Whenever Joinder not Feasible. If a person as described in subdivision (a) (1)–(2) hereof cannot be made a party, the court shall determine whether in equity and good conscience the action should proceed among the parties before it, or should be dismissed, the absent person being thus regarded as indispensable. The factors to be considered by the court include: first, to what extent a judgment rendered in the person's absence might be prejudicial to him or those already parties; second, the extent to which, by protective provisions in the judgment, by the shaping of relief, or other measures, the prejudice can be lessened or avoided; third, whether a judgment rendered in the person's absence will be adequate; fourth, whether the plaintiff will have an adequate remedy if the action is dismissed for nonjoinder."

Under Rule 19(a), Royal would appear to be a person whose joinder would in fact deprive the Court of jurisdiction. Diversity would be destroyed if Royal were a party, yet in Royal's absence, it cannot now be determined that complete relief would be accorded the other parties. Subdivision (a) (1). As the Advisory Committee Notes observe, the interests that are being furthered here are not only those of the parties, but also that of the public in avoiding repeated lawsuits on the same essential subject matter. The question arises whether if Royal were dissatisfied with the outcome of this case, it might later sue on one or more of the causes of action stated herein. As more fully discussed hereinbelow, it cannot be conclusively determined at this stage of this proceeding whether or not Royal would be entitled to re-litigate any of the issues of this case at a later time. Accordingly, Royal is "a person as described in subdivision

(a) (1)–(2) hereof [which] cannot be made a party," and the inquiry in this case must be made under subdivision (b) to determine whether the action should proceed with Royal dropped or should be dismissed.

In 1966, both subdivision (a) and subdivision (b) of Rule 19 were extensively revised. One of the principal purposes of these revisions was to emphasize that pragmatic considerations should be controlling rather than the technical or abstract character of the rights of persons whose joinder was in question. See Advisory Committee Notes on 1966 Amendments. In stressing the necessity for considering pragmatic considerations, the Committee stated that a choice should be made under the circumstances of each particular case between the alternatives of proceeding with the action in the absence of particular necessary parties or dismissing the action. The Rule in its earlier form had not indicated what factors were relevant in deciding whether an action should proceed or should be dismissed when joinder of necessary parties such as the insurers here was not feasible. In the present Rule, four factors are detailed in subdivision (b), and the ultimate determination whether an action is to be dismissed or whether it should go ahead without certain necessary parties is to be made by the Court "in equity and good conscience."

In Provident Tradesmens Bank & Trust Co. v. Patterson, *supra*, the Supreme Court commented on the considerations that would control under the revised Rule 19 as follows (at 118–119, 88 S.Ct. at 743):

"The decision whether to dismiss (i. e., the decision whether the person missing is 'indispensable') must be based on factors varying with the different cases, some such factors being substantive, some procedural, some compelling by themselves, and some subject to balancing against opposing interests. Rule 19 does not prevent the assertion of compelling substantive interests; it merely commands the courts to examine each controversy to make certain that the interests really exist. To say that a court 'must' dismiss in the absence of an indispensable party and that it 'cannot proceed' without him puts the matter the wrong way around: a court does not know whether a particular person is 'indispensable' until it has examined the situation to determine whether it can proceed without him."

Applying the Rule 19(b) factors to the case at hand, this Court concludes that the insurers here should be regarded as indispensable under the Rule and that this action should accordingly be dismissed. Of all the pragmatic considerations to be weighed by this Court, the one that stands out most strikingly in this case is the fact that the plaintiffs have available to them, and in fact have already filed suit in, another forum. If the motions to dismiss are granted because of a lack of complete diversity of citizenship, plaintiffs are not left without a remedy. They may in such event proceed with the suit that has been brought in the Circuit Court for Baltimore County and which presents the same claims against the same defendants. Therefore, the fourth factor specified in subdivision (b) of Rule 19 has been satisfied here, inasmuch as plaintiffs will have an adequate remedy if this action is dismissed.

Of course, the fourth factor is not the only pragmatic consideration to be weighed, although it is, in the opinion of this Court, the most important in this case. In deciding whether in equity and good conscience this action should be dismissed, all relevant factors should be considered. It appears, however, that the facts here do not raise any questions under the second or third factors listed.

There is a dispute between the parties as to the effect which the first factor should have, namely, the extent to which a judgment rendered in this case in the

absence of the insurers might be prejudicial to the defendants. In this connection, the defendants suggest that if Pepco sues here alone and if substantial portions of the claim are owned by the two insurance companies, the latter might be presented with an opportunity to relitigate their claims if they were not satisfied with the amounts recovered by Pepco in this suit. The plaintiffs argue, however, that the insurers would be bound by *res judicata* in any future action that might be brought against these defendants. Although principles of *res judicata* might well bar any future suit against the defendants based on these claims, this Court cannot, at the present time, conclusively make any such determination. The present suit is in three counts, and theories of negligence, breach of contract and breach of warranty have been asserted. Judgment is sought against different defendants in each of the three counts. Until proof is adduced, this Court could not determine whether as subrogees, Royal and Maryland Casualty were bound by any determinations made in a litigation pressed by their subrogor. For these reasons, there is at the present time a risk that the insurers could re-litigate the issues presented here, or at a very minimum, require the defendants to come into another court and prove that principles of *res judicata* or collateral estoppel did apply in any subsequent action. If the action were to proceed with all parties named as plaintiffs, this possibility would be effectively removed. Therefore, the first factor in subdivision (b) also indicates that Royal should be regarded as indispensable here and that the action should be dismissed.

If the two subdivision (b) factors relevant in this case are compared, the availability of another forum is, in this Court's opinion, the weightier of the two by far. Indeed, if it were not possible for the plaintiffs in this case to sue the defendants in another forum and secure the same relief available here, this Court would have no hesitation in concluding that the suit should proceed here even in the absence of the insurers. It is undoubtedly more important that there be *some* forum available to determine the substantial claims presented by the complaint than that defendants should face a future risk of multiple suits. However, where there is an adequate state remedy, as here, such risk can and should be avoided by requiring all the parties to be before the Court at the same time.

One other aspect of this case has influenced this Court in its conclusion that in equity and good conscience this action is not properly here. Plaintiffs drew their complaint with all three real parties in interest named as a plaintiff or as use plaintiffs.[8] When defendants called attention to the fact that there was incomplete diversity of citizenship, plaintiffs hastened to drop two of the parties under Rule 21 to correct the jurisdictional defect. It seems inappropriate under general principles of equity that plaintiffs should be permitted to pick and choose which necessary parties they will name for the purpose of conferring federal jurisdiction on this Court. If indispensability is a benefit which can be waived by a party for the purpose of securing diversity jurisdiction, federal courts would lose control over their jurisdictional boundaries. Equity and good conscience would seem to require that under circumstances such as those present here, parties should present their claims in a state court rather than attempt to manipulate jurisdiction by dropping plaintiffs with a substantial interest in the claim solely

8. Maryland law requires that the insurers be named as parties plaintiff. Rule 243, Maryland Rules of Procedure. The practice in the Maryland courts of entering the case to the use of the insurer has been permitted in this Court. Poleski v. Moore-McCormack Lines, D.C., 21 F.R.D. 579, 582 (1958).

for the purpose of retaining jurisdiction in the federal court.

In support of their position here, plaintiffs place heavy reliance on a footnote in United States v. Aetna Casualty & Surety Co., *supra*. The Supreme Court found both the insured and the insurer in that case to be "necessary" parties under Rule 19(b) in its then existing form. In footnote 19, 338 U.S. at page 382, 70 S.Ct. at page 216, 94 L.Ed. 171, the Court said this:

> "They are clearly not 'indispensable' parties under the familiar test of Shields v. Barrow, [58 U.S. 130] 17 How. 130, 139, [15 L.Ed. 158] (1855), that such parties have 'an interest of such a nature that a final decree cannot be made without either affecting that interest, or leaving the controversy in such a condition that its final termination may be wholly inconsistent with equity and good conscience.' See Delaware County v. Diebold Safe & Lock Co., 133 U.S. 473, 488 [10 S.Ct. 399, 403, 33 L.Ed. 674] (1890); Hubbard v. Manhattan Trust Co., [2 Cir.] 87 F. 51; Rogers v. Penobscot Mining Co., [8 Cir.] 154 F. 606; 3 Moore, Federal Practice (2d ed.) p. 2178."

This dictum has little applicability here. The *Aetna* case arose under the Federal Tort Claims Act and therefore did not involve any question of diversity jurisdiction. Furthermore, that case was decided in 1949, long before Rule 19 was amended and put in its present form emphasizing that pragmatic considerations should be controlling. For similar reasons, the earlier decision in Dayton Veneer and Lumber Mills v. Cincinnati Railway, 1 F.R.D. 444 (E.D. Tenn.1940), likewise relied upon by plaintiffs, is hardly pertinent to questions arising under Rule 19 in its present form.

Much more to the point are recent cases involving the dismissal of federal court actions because of the presence of one or more factors under Rule 19(b), including in particular the availability of an adequate remedy in the state court. Broussard v. Columbia Gulf Transmission Co., 398 F.2d 885 (5th Cir. 1968); Jamison v. Memphis Transit Management Co., 381 F.2d 670 (6th Cir. 1967); D. A. Foster Equipment Corp. v. Fidelity & Casualty Company of N. Y., 262 F.Supp. 278 (D.Md.1966). In *Broussard*, as here, all the plaintiffs, including the non-diverse plaintiff, could sue in the state court, and there was a risk of multiple suits if all the parties were not before the Court at the same time.

For these reasons, the plaintiffs' motion under Rule 21 is denied, and the defendants' motion to dismiss is granted with costs. Counsel should prepare and submit an appropriate Order.