**GLOBAL DISCOUNT TRAVEL SERVICES, LLC,**
Plaintiff,

v.

**TRANS WORLD AIRLINES, INC., Defendant.**

No. 96 Civ. 2030 (SS).

United States District Court, S.D. New York.

March 24, 1997.

O'Sullivan Graev & Karabell, L.L.P., John M. Delehanty, Joshua H. Epstein, Ariadne S. Montare, New York City, for Defendant.

Jay Goldberg, P.C., Burstein & Fass, L.L.P., Judd Burstein, New York City, for Plaintiff.

## OPINION AND ORDER

SOTOMAYOR, District Judge.

Defendant Trans World Airlines ("TWA") moves pursuant to Fed.R.Civ.P. 12(b)(6) to dismiss plaintiff's Sherman and Lanham Act claims for failure to state a claim. TWA also moves pursuant to Fed.R.Civ.P. 12(b)(7) to dismiss plaintiff's breach of contract and declaratory judgment claims for failure to join an indispensable party under Fed.R.Civ.P. 19(b). For the reasons to be discussed, the motion to dismiss is GRANTED.

## BACKGROUND

Plaintiff Global Discount Travel Services, LLC ("Global") is a Nevada limited liability company that sells and markets low price, discounted TWA airline tickets. (*See* Am. Compl. ¶ 3). Defendant TWA is a Delaware corporation with its principal place of business in St. Louis, Missouri. (*See id.* ¶ 4). TWA is a major airline that provides both domestic and international air transportation.

Global is controlled by Carl Icahn, who also owns or controls a number of other non-party business entities that, together with Global, are referred to in the Amended Complaint as the "Icahn Companies." (*Id.* at ¶ 8). One of the non-party companies is the Karabu Corporation ("Karabu"). TWA and Karabu are parties to a Karabu Ticket Program Agreement ("the Ticket Agreement") and to "loan agreements [ ('the Extension and Consent Agreements') ] pursuant to which the Icahn Companies extended $200 million in loans to TWA." (*Id.* ¶ 9).

The present action arises from a dispute between TWA and the Icahn Companies over the proper interpretation of the Ticket Agreement. TWA alleges that under the agreements, Karabu, Icahn, and certain other affiliates secured the right to sell certain types of discounted TWA tickets to specified customers in return for Karabu and Icahn

extending the maturity date of the outstanding loans made to TWA. (*See* Def.'s Mem. at 2–3). Global alleges that the "Ticket Agreement specifically contemplates the right of other companies controlled by Carl Icahn to execute a Joinder Agreement, pursuant to which such companies are viewed as signatories to the Karabu Agreement, and thereby acquire the same rights that Karabu has under the Ticket Agreement." (Am.Compl. ¶ 11).

On or about August 14, 1995, Global executed a Joinder Agreement and elected to join itself as a party to the Ticket Agreement. (*See id.*). TWA alleges that "the parties agreed to substantial restrictions on Karabu's and Icahn's rights to sell discounted TWA airline tickets." (Def.'s Mem. at 3). It contends that "Icahn and Karabu, through Global Discount and Global Travel, were selling certain of the discounted tickets (the 'System Tickets') to the general public in contravention of the Ticket Agreement." (*Id.*) Pursuing these theories, TWA filed a declaratory judgment and breach of contract action in a Missouri state court against all of the Icahn companies, including plaintiff and Karabu. (*See* Def.'s Mem. at 1). Global in this action argues that "as a party to the Ticket Agreement, [it] may sell tickets through Independent Travel Agents to any 'End User.' " (Am. Compl. ¶ 13).[1]

Global contends that TWA has "secretly sought out and punished Independent Travel Agents doing business with Global." (*Id.* ¶ 16). It alleges that TWA has coerced numerous Independent Travel Agents ("ITAs") throughout the United States "into ending or limiting the marketing and/or sale of the low price, discounted TWA airline tickets offered by Global." (*Id.* at 17). Global further maintains that TWA and the ITAs have entered into a conspiracy "to refrain from doing business with Global, or to limit the amount of business they will do with it." (*Id.*). In addition, Global contends that TWA has "intentionally and falsely claim[ed] to numerous Independent Travel Agents that its competitor, Global, does not have the right under the

---

1. Global filed this action one hour before TWA filed its state court action. (Pl.'s Mem. at 24 n. 10.).

Ticket Agreement to sell System Tickets to any person who actually uses the ticket, *i.e.*, an 'End User.'" (*Id.* ¶ 58). Global claims that the alleged breach of contract by TWA, and purported violations of sections 1 and 2 of the Sherman Act and the Lanham Act have caused it to suffer economic injury.

## DISCUSSION

### I. Sufficiency of a Complaint Under Rule 12(b)(6)

A district court's function on a motion to dismiss under Fed.R.Civ.P. 12(b)(6) is to assess the legal feasibility of the complaint. *Kopec v. Coughlin,* 922 F.2d 152, 155 (2d Cir.1991). The issue "is not whether a plaintiff will ultimately prevail, but whether the claimant is entitled to offer evidence to support the claims." *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974). Allegations contained in the complaint must be construed favorably to the plaintiff. *See Walker v. New York,* 974 F.2d 293, 298 (2d Cir.1992), *cert. denied,* 507 U.S. 961, 113 S.Ct. 1387, 122 L.Ed.2d 762 (1993). Dismissal is warranted only where "it appears beyond doubt that the plaintiff can prove no set of facts in support of his [or her] claim that would entitle him [or her] to relief." *Ricciuti v. NYC Transit Authority,* 941 F.2d 119, 123 (2d Cir.1991) (quoting *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957) (footnote omitted)).

In considering a Rule 12(b)(6) motion, a court must look to: (1) the facts stated on the face of the complaint; (2) documents appended to the complaint; (3) documents incorporated in the complaint by reference; and (4) matters of which judicial notice may be taken. *See Hertz Corp. v. City of New York,* 1 F.3d 121, 125 (2d Cir.1993) (citing *Allen v. WestPoint–Pepperell, Inc.,* 945 F.2d 40, 44 (2d Cir.1991)); *see also Samuels v. Air Transport Local 504,* 992 F.2d 12, 15 (2d Cir.1993) (same).

### II. The Sherman Antitrust Claims

A. *Rule 12(b)(6) Standard in Antitrust Cases*

■ "[A] short plain statement of a claim for relief which gives notice to the opposing party is all that is necessary in antitrust cases, as in other cases under the Federal Rules." *George C. Frey Ready–Mixed Concrete, Inc. v. Pine Hill Concrete Mix Corp.,* 554 F.2d 551, 554 (2d Cir.1977). This does not mean that "conclusory allegations which merely recite the litany of antitrust ... will suffice." *John's Insulation, Inc. v. Siska Constr. Co.,* 774 F.Supp. 156, 163 (S.D.N.Y.1991); *see also International Audiotext Network, Inc. v. AT & T Co.,* 893 F.Supp. 1207, 1211 (S.D.N.Y.1994), *aff'd* 62 F.3d 69 (1995). An antitrust complaint must "adequately ... define the relevant product market, ... allege antitrust injury, [and] ... allege conduct in violation of antitrust laws." *Re–Alco Indus., Inc. v. National Ctr. for Health Educ., Inc.,* 812 F.Supp. 387, 391 (S.D.N.Y.1993). In considering the complaint under Fed.R.Civ.P. 12(b)(6), "[t]he Court must accept the pleader's allegations of facts as true together with such reasonable inferences as may be drawn in [the pleader's] favor." *International Audiotext Network, Inc.,* 893 F.Supp. at 1211 (citing *Deep South Pepsi–Cola Bottling Co. v. PepsiCo, Inc.,* 1989 WL 48400, at *5 (S.D.N.Y. May 2, 1989)). In deciding the present motion, I may consider the Ticket Agreement, which is "incorporated in the [Amended Complaint] by reference." *Kramer v. Time Warner, Inc.,* 937 F.2d 767, 773 (2d Cir.1991); *see also International Audiotext Network, Inc.,* 893 F.Supp. at 1211–12.

B. *The Section One and Section Two Claims*

■ "In order to survive a motion to dismiss, a claim under Sections 1 and 2 of the Sherman Act must allege a relevant geographic and product market in which trade was unreasonably restrained or monopolized." *Kramer v. Pollock–Krasner Found.,* 890 F.Supp. 250, 254 (S.D.N.Y.1995); *see also Deep South Pepsi–Cola Bottling Co., Inc. v. PepsiCo, Inc.,* 1989 WL 48400, at *7 (S.D.N.Y. May 2, 1989). A complaint must allege a relevant product market in which the anticompetitive effects of the challenged activity can be assessed. *See Jefferson Parish Hosp. Dist. No. 2 v. Hyde,* 466 U.S. 2, 104 S.Ct. 1551, 80 L.Ed.2d 2 (1984). Further,

"the law is clear that the distribution of a single brand, like the manufacture of a single brand, does not constitute a legally cognizable market." *Deep South Pepsi–Cola Bottling Co., Inc.*, 1989 WL 48400, at *8. A relevant product market includes all products reasonably interchangeable, determination of which requires consideration of cross-elasticity of demand. *See United States v. E.I. du Pont de Nemours & Co.*, 351 U.S. 377, 76 S.Ct. 994, 100 L.Ed. 1264 (1956). "Plaintiff's failure to define its market by reference to the rule of reasonable interchangeability is, standing alone, valid grounds for dismissal." *Ford Piano Supply Co. v. Steinway & Sons*, 1988 WL 3488 (S.D.N.Y. Jan.13, 1988); *see also B.V. Optische Industrie de Oude Delft v. Hologic, Inc.*, 909 F.Supp. 162, 172 (S.D.N.Y. 1995); *E & G Gabriel v. Gabriel Bros., Inc.*, 1994 WL 369147, at *3 (S.D.N.Y. July 13, 1994).

▪ Global argues that the relevant product market in this case is tickets for travel on TWA between certain city pairs. (*See* Pl.'s Mem.Law. at 9). It contends that when a "consumer needs to fly from a TWA origin city to one of TWA's destination cities, and wants a certain package (flight time and date, mileage, first class confirmed seat at full fare price, etc.), only a TWA ticket will do." (*See id.*) Global's legal analysis is based on the Supreme Court's statement in *Eastman Kodak Co. v. Image Technical Services, Inc.*, 504 U.S. 451, 112 S.Ct. 2072, 119 L.Ed.2d 265 (1992), that the Court's "prior cases support the proposition that in some instances one brand of a product can constitute a separate market." *Id.* at 482, 112 S.Ct. at 2090 (citations omitted). In *Kodak*, the Court adopted a test that determines the relevant market by a "factual inquiry into the 'commercial realities' faced by consumers." *Id.* For the reasons to be discussed, I find that Global has failed to define a relevant product market for which trade could be unreasonably restrained or monopolized.

The rule of reasonable interchangeability dictates that the relevant product market in this case be at least the market for all airline tickets between the relevant city pairs, not just tickets on TWA. The "certain package" factors cited by Global do not mandate the purchase of TWA tickets between certain city pairs. Flight times, dates, mileage, and other factors are simply features that enhance the enjoyment of the product. A consumer might prefer flying TWA because a flight from City X to City Y leaves at a better time in the afternoon, or has better other terms, than the same flight from City X to City Y on Continental. The plaintiff's argument is analogous to a contention that a consumer is "locked into" Pepsi because she prefers the taste, or NBC because she prefers "Friends," "Seinfeld," and "E.R." A consumer might choose to purchase a certain product because the manufacturer has spent time and energy differentiating his or her creation from the panoply of products in the market, but at base, Pepsi is one of many sodas, and NBC is just another television network. Likewise, tickets on TWA are like tickets on any other airline. Tickets on TWA are reasonably interchangeable with tickets on other airlines—all tickets between city pairs get passengers to and from desired locations.

Further, Global's application of the Court's analysis in *Kodak* to this situation is flawed. In *Kodak*, consumers were effectively "locked-in" to buy replacement parts and services because of their purchase of a Kodak machine. *Kodak*, 504 U.S. at 482, 112 S.Ct. at 2090. The service and parts for Kodak equipment were not interchangeable with other manufacturers' service and parts. Thus, if one purchased a Kodak copier, the only supplier the consumer could turn to for replacements parts and service was Kodak. Kodak's practices ensured further consumption of Kodak equipment and services.

The situation in *Kodak* is not analogous to the situation in this case. Unlike *Kodak*, the purchase of a TWA ticket from City X to City Y does not require further TWA ticket purchases down the line. If a consumer purchases an airline ticket on TWA for one trip, she or he is free to choose American, Continental, Delta, United, or another airline on the next trip. Only customer preference for a product, not compulsion by the product itself as in *Kodak*, leads a customer to buy a TWA ticket as opposed to another airline ticket. Thus, the narrow exception for a one

brand market set out in *Kodak* does not exist in the single brand market plaintiff alleges here.

Because Global cannot define a relevant product market in a single brand product, it is impossible to assess the anticompetitive effects of the challenged practices. *See Re-Alco,* 812 F.Supp. at 392. Plaintiff has made no reasonable showing why TWA airline tickets for travel between certain cities should be considered a market unto itself, as distinguished from the market consisting of all airline tickets for travel between the paired cities. Accordingly, plaintiff's Amended Complaint fails to discuss reasonably interchangeable products and the relevant differences, and therefore fails to state a claim for violation of sections 1 and 2 of the Sherman Act.

### III. The Lanham Act Claim

Section 43(a)(1)(B) of the Lanham Act imposes liability on "[a]ny person who ... uses in commerce any ... false or misleading description of fact, or false or misleading representation of fact, which ... in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services or commercial activities." 15 U.S.C. § 1125(a)(1)(B) (1994).

■ Global's Lanham Act claim is based on its contention that TWA has been engaged in "a commercial promotion of the sale of its tickets through Independent Travel Agents by intentionally and falsely claiming ... that its competitor, Global, does not have the right under the Ticket Agreement to sell System Tickets to any person who actually uses the ticket, *i.e.,* an 'End User.'" (Am. Compl. ¶ 57). It alleges that "[b]y making these intentional, false representations to Independent Travel Agents, TWA has succeeded in disseminating its false claims to the relevant purchasing public." (*Id.*).

In examining Global's claim, I find the analytical approach of the D.C. Circuit in *Dial A Car, Inc. v. Transportation, Inc.,* 82 F.3d 484 (1996), to be useful. In *Dial A Car,* a limousine service brought a Lanham Act

false advertising action against a taxicab company that allegedly provided corporate account transportation services outside its counties of licensure. The limousine service contended that the taxicab company misrepresented to customers that its cars were authorized to provide the same corporate account services as the limousine service. The limousine service relied on its interpretation of a D.C. Taxicab Commission Order and argued that any interpretation contrary to the Order was a false statement of fact. The D.C. Circuit Court concluded that because the D.C. Taxicab Commission had not addressed whether the taxicab company's actions violated its Order, the limousine company could not be fined under the Lanham Act for making a false statement about a law when the law was unclear at the time of the statement. *See id.* at 489 ("The proper inquiry is whether the law was ambiguous *at the time appellees' alleged statements were made.*") (emphasis in original). The D.C. Court observed that the Lanham Act should not be transfixed into "a handy device to reach and decide all sorts of local law questions." *Id.* at 490; *see also Sandoz Pharmaceuticals Corp. v. Richardson–Vicks, Inc.,* 902 F.2d 222, 230–32 (3d Cir.1990) (dismissing plaintiff's claims under Lanham Act where interpretation of FDA regulations at issue was in doubt).

Here, a court has not ruled on the contractual provisions of the Ticket Agreement, and a genuine issue of fact exists as to the meaning of the Ticket Agreement. *Cf. Triad Systems Corp. v. Southeastern Express Co.,* 1994 WL 446049, *18 (N.D.Cal.1994) (finding movant "not likely to succeed on the merits of its Lanham Act claim" where opposing party's statements "constitute[d] good faith opinions regarding the state of law" with respect to opposing party's underlying copyright action). In this context, Global's attempt to characterize TWA's assertions as "false statements of fact" is "simply using the Lanham Act to try and enforce its preferred interpretation" of the Ticket Agreement. *See Dial A Car,* 82 F.3d at 489. In the absence of a clear and unambiguous determination [2] of the contractual rights and li-

2. In *Dial A Car,* the D.C. Circuit expressed in a     footnote the belief that "hypothetically speaking,

abilities of the parties under the Ticket Agreement, at worst, defendant's statements simply expressed an opinion—not a false statement—about the legal effect of its contracts. Until the legal question regarding the interpretation of the Ticket Agreement is resolved, TWA's statements are incapable of being proved false. *Cf. Mr. Chow of New York v. Ste. Jour Azur S.A.,* 759 F.2d 219, 226 (2d Cir.1985) (in libel context, holding that statements must be examined to see "if they are objectively capable of being proved true or false."); *Gillette Co. v. Norelco Consumer Products Co.,* 946 F.Supp. 115, 137 (D.Mass.1996) (in defamation context, discussing Supreme Court precedent regarding whether a statement is one of fact or opinion and concluding that "[t]he lesson to be drawn from [Supreme Court precedent] is that capacity for verification is the most important question in determining whether a statement is one of fact.").

■ The Lanham Act should not be used to transform a contractual dispute between parties into a federal cause of action, particularly where a party expresses an opinion about a contractual right. *See Truck Components, Inc. v. K–H Corp.,* 776 F.Supp. 405, 410–11 (N.D.Ill.1991) (where defendant's press release discussed its manufacture of goods which a covenant not to compete with plaintiff purportedly prohibited defendant from manufacturing, court held that Lanham Act was not violated because "[t]he Lanham Act is limited to misrepresentations about a product or service [while the present action was] essentially a breach of contract case.");

*id.* at 411 (providing that "[t]his Court is unwilling to expand the bounds of the Lanham Act, and thus federal jurisdiction, to every breach of a covenant not to compete."). Therefore, I find that Global has failed to state a cause of action under the Lanham Act.

## IV. Motion to Dismiss for Absence of an Indispensable Party

■ In order to dismiss a claim or action for failure to join an indispensable party, the Court must undertake a two-step inquiry. First, the Court must determine whether the absent party is "necessary" under Fed. R.Civ.P. 19(a).[3] If the Court determines that the party is necessary, and for any reason that the party cannot be joined, then the Court must proceed to the second step and determine whether "under the circumstances of the particular case, the court could, in equity and good conscience, proceed in the party's absence." *Ente Nazionale Idrocarburi v. Prudential Securities Group, Inc.,* 744 F.Supp. 450, 456 (S.D.N.Y.1990); *see also* 5A Wright & Miller, Fed. Pract. and Proc. § 1359 at 425 (1990) ("if the absentee cannot be joined, the court then must determine, by balancing the guiding factors set forth in Rule 19(b), whether to proceed without him [or her] or to dismiss the action").

### A. *Karabu as a Necessary Party*

■ As a direct party to the contract which is under dispute, Karabu is a necessary party to this litigation for at least three

a regulation might conceivably be drafted that would be so clear on its face that no good faith doubt concerning its interpretation would be possible, even without an explicit statement from the Taxicab Commission." 82 F.3d at 489 n. 3. The Ticket Agreement, here, however, is not such a document, and to the extent the Agreement might be considered clear on its face—it would more likely support TWA's assertions about its contractual rights, rather than Global's.

3. Fed.R.Civ.P. 19(a)(1)–(2) provides:

(a) **Persons to be Joined if Feasible.** A person who is subject to service of process and whose joinder will not deprive the court of jurisdiction over the subject matter of the action shall be joined as a party in the action if (*l*) in the person's absence complete relief cannot be ac-

corded among those already parties, or (2) the person claims an interest relating to the subject of the action and is so situated that the disposition of the action in the person's absence may (i) as a practical matter impair or impede the person's ability to protect that interest or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of the claimed interest. If the person has not been so joined, the court shall order that the person be made a party. If the person should join as a plaintiff but refuses to do so, the person may be made a defendant, or, in a proper case, an involuntary plaintiff. If the joined party objects to venue and joinder of that party would render the venue of the action improper, that party shall be dismissed from the action.

reasons articulated under Fed.R.Civ.P.(a). First, because the contract in dispute is an agreement between Karabu and TWA, and the Joinder Agreement limits the rights given to Global to the same rights as Karabu under the Ticket Agreement (see Am. Compl. ¶¶ 8–13), Karabu is a person in "whose absence complete relief cannot be accorded among those already parties." Fed.R.Civ.P. 19(a)(1). The Advisory Committee's note to this provision provides that the complete relief clause of Rule 19(a) was designed to "stress[ ] the desirability of joining those persons in whose absence the court would be obliged to grant partial or 'hollow' rather than complete relief to the parties before the court." Fed.R.Civ.P. 19(a) advisory committee's note. "The interests that are being furthered here," the Committee wrote, "are not only those of the parties, but also that of the public in avoiding repeated lawsuits on the same essential subject matter." Id.; see also E.I. Du Pont De Nemours & Co. v. Fine Arts Reproduction Co., Inc., 1995 WL 312505, *3 (S.D.N.Y.1995). It is uncontestable that Global's rights under the contract arise from the "same essential subject matter" as Karabu's rights under the exact same contract. Therefore, at the very least, the public's interest in "avoiding repeated lawsuits on the same essential subject matter" necessitates a finding that Karabu is a necessary party.

Moreover, the second clause of Rule 19(a) compels a finding that Karabu is a necessary party, in that Karabu is an interested party in this action and "is so situated that the disposition of the action [Karabu's] absence may (i) as a practical matter impair or impede [Karabu's] ability to protect [its] interest ..." Fed.R.Civ.P. 19(a)(2). Although Global correctly points out that Karabu may have waived its rights to complain by dismissing its action against TWA, (see Pl.'s Mem. at 22), Karabu's attempts to protect its interest nevertheless may be practically impaired or impeded by proceeding with this action in its absence. See Ente Nazionale Idrocarburi, 744 F.Supp. at 458 (holding that absent party is necessary party with "real interests that are clearly at stake in this action" where absent party "has clear rights and affirmative obligations under the contract which [the court] must construe"); Ragan Henry Broadcast Group, Inc. v. Hughes, 1992 WL 151308, *2 (E.D.Pa.1992) ("Generally, where rights sued upon arise from a contract, all parties thereto must be joined.") (citing cases); Travelers Indem. Co. v. Household Int'l, Inc., 775 F.Supp. 518, 527 (D.Conn.1991)(providing that "a contracting party is the paradigm of an indispensable party.") (citing cases).

This Court's necessary interpretation of the Karabu Ticket Agreement—while it would only be persuasive authority for another court's interpretation of the contract—will undoubtedly have a practical effect on any subsequent action brought by Karabu concerning the Ticket Agreement. Citing precedent from this district and other Circuits, Global argues that the fact that "a TWA victory here would be 'persuasive precedent' against Karabu in another litigation," is insufficient to establish Karabu as a necessary party. (See Pl.'s Mem. at 22). I disagree. Rule 19(a) does not require that this Court's finding on the meaning of the contract literally bind all other courts that might give attention to the matter. Rather, Rule 19(a)(2) "recognizes the importance of protecting the person whose joinder is in question against the practical prejudice to him which may arise through a disposition of the action in his absence." Fed.R.Civ.P. 19(a) advisory committee's note (emphasis added). Therefore, as a practical matter, Karabu's interests could be impaired or impeded by this Court's resolution of a contract to which it is the primary signatory.

Finally, and perhaps most persuasively, Karabu is a necessary party under Rule 19(a) because its absence may "leave [one of] the persons already [a] part[y] subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of the claimed interest." Fed.R.Civ.P. 19(a)(2)(ii). On this question, Global somewhat inadvertently concedes TWA's argument. (See Pl.'s Mem. at 22; Def.'s Reply at 9). Because res judicata will not bind any subsequent court to this Court's interpretation of the contract, as Global previously argued, TWA is at risk of having another court re-decide its rights and obligations un-

der the Agreement. This situation is precisely what Rule 19 seeks to avoid, and for this reason, as well as for the other reasons discussed, I conclude that Karabu is a necessary party under Rule 19(a). *See Avon Cosmetics (FEBO) Ltd. v. New Hampton, Inc.,* 1991 WL 90808, \*4 (S.D.N.Y.1991) (providing that "the facts and circumstances of this case are such that a judgment rendered in Avon's absence exposes [defendant] to a substantial risk of double liability, or at the very least, a substantial risk of double litigation over the same subject matter. Due to basic principles of res judicata and collateral estoppel the Court cannot shape the relief to reduce or eliminate this risk without Avon as a party to this action.").

### B. *Karabu as an Indispensable Party*

■ According to Rule 19(b), the factors to be considered in determining whether a necessary party under Rule 19(a) is an indispensable party under Rule 19(b) are as follows:

[F]irst, to what extent a judgment rendered in the person's absence might be prejudicial to the person or those already parties; second, the extent to which, by protective provisions in the judgment, by shaping relief, or other measures, the prejudice can be lessened or avoided; third, whether a judgment rendered in the person's absence will be adequate; fourth, whether the plaintiff will have an adequate remedy if the action is dismissed for nonjoinder.

Fed.R.Civ.P. 19(b). This determination is an equitable one and is left to a court's discretion. *See Envirotech Corp. v. Bethlehem Steel Corp.,* 729 F.2d 70, 75 (2d Cir.1984).

"The decision whether to dismiss (i.e., the decision whether the person missing is 'indispensable') must be based on factors varying with the different cases, some such factors being substantive, some procedural, some

compelling by themselves, and some subject to balancing against opposing interests." *Provident Tradesmens Bank & Trust Co. v. Patterson,* 390 U.S. 102, 119, 88 S.Ct. 733, 743, 19 L.Ed.2d 936 (1968). In *Felix Cinematografica v. Penthouse International Limited,* 99 F.R.D. 167 (S.D.N.Y.1983), Judge Weinfeld further explained the Supreme Court's analysis by observing that:

"Mr. Justice Harlan [in *Provident Tradesmens Bank & Trust Co.*] particularized four 'interests' to be evaluated in deciding a claim of indispensability. First, the interest of the plaintiff in having a forum, with the strength of this interest dependent upon 'whether a satisfactory alternative exists.' Second, the defendants' interest in avoiding multiple litigation and inconsistent relief. Third, the interests of a non-party whom it could have been desirable to join even though in his absence a judgment is not res judicata as to, or legally enforceable against him. Finally, the interest of the courts and the public in complete, consistent and efficient settlement of controversies."

*Id.* at 169.

■ Applying these factors, I find that Karabu is an indispensable party to this action. First, Global has an alternative forum to litigate its breach of contract claim against TWA. There is currently an action pending in the Circuit Court of the State of Missouri between TWA and the Icahn Companies (including Global and Karabu). Indeed, there is a strong suggestion that Karabu and Icahn were dropped as parties to this action when Global amended its complaint because their presence in this case would destroy diversity. Such an act would amount to a blatant attempt at forum shopping.

Second, TWA clearly has a strong interest in avoiding multiple litigation and potentially inconsistent relief if this action was to proceed without Karabu as a party.[4] Under the

---

4. Global argues under the precedent of *Associated Dry Goods v. Towers Financial Corp.,* 920 F.2d 1121 (2d Cir.1990) that TWA cannot complain of this potential risk because it is within its power and prerogative to join Karabu into this litigation by asserting against Global a compulsory or permissive counterclaim and thereby establishing ancillary jurisdiction over Karabu, an otherwise

non-diverse party. *See id.* On this point, however, I must agree with TWA that the facts of *Associated Dry Goods* were unique and highly distinguishable from this action. In *Associated Dry Goods,* it was known that the defendant intended to seek a compulsory counterclaim, and the Second Circuit therefore held "as dispositive [defendant's] ability to avoid all prejudice to it-

Ticket Agreement, Karabu has the right to seek liquidated damages of $10 million if TWA is found to have materially breached the contract. (*See* Ticket Agreement § 12(b)(iii)). Moreover, a judgment in this action in TWA's favor would not bar identical claims by Karabu.

Third, the public's interest in efficient settlement of controversies supports a finding that Karabu is an indispensable party to this action. The absence of Karabu will lead to a risk of further litigation over the breach of contract dispute. All parties to this action are also involved in a state court action in Missouri, and an efficient settlement of controversies dictates that discovery for and resolution of the breach of contract claim proceed in that forum.

As the Second Circuit has stated,

"Equity and good conscience would seem to require that under circumstances such as those present here, parties should present their claims in a state court rather than attempt to manipulate jurisdiction by dropping plaintiffs with a substantial interest in the claim solely for the purpose of retaining jurisdiction in the federal forum."

*Envirotech*, 729 F.2d at 76 (quoting *Potomac Elec. Power Co. v. Babcock & Wilcox Co.*, 54 F.R.D. 486, 492–93 (D.Md.1972)).

In sum, I find in equity and good conscience that Karabu is an indispensable party, and grant TWA's Rule 12(b)(7) motion to dismiss the state law claims for failure to join an indispensable party. *See Prescription Plan Serv. Corp. v. Franco*, 552 F.2d 493, 496 (2d Cir.1977) (a court must take a flexible approach to the issue of whether a party is indispensable, as a "mechanical determination of who is an indispensable party is clearly inappropriate in light of Rule 19(b)'s reference to 'equity and good conscience'").

**V. Declaratory Judgment Claim**

 The Second Circuit has held that "the Declaratory Judgment Act, 28 U.S.C.

§ 2201, does not expand the jurisdiction of the federal courts." *See Cable Television Ass'n of N.Y., Inc. v. Finneran*, 954 F.2d 91, 94 (2d Cir.1992). "A declaratory judgment plaintiff must have an independent basis for federal jurisdiction." *Albradco, Inc. v. Bevona*, 982 F.2d 82, 85 (2d Cir.1992). Because I have dismissed the breach of contract claim, there is no independent basis for federal jurisdiction in this case, and the declaratory judgment action must be dismissed as well.

### CONCLUSION

For the reasons set forth above, I GRANT the defendant's motion to dismiss the Sherman and Lanham Act claims for failure to state a claim and the remaining claims for failure to join an indispensable party or for lack of federal jurisdiction. The Clerk of the Court is directed to enter judgment in accordance with this Opinion and Order dismissing the Complaint in its entirety.

SO ORDERED.

self by asserting a compulsory counterclaim against Associated pursuant to Rule 13(a) and adding [the absent party] as a party to the counterclaim under Rule 13(h)." *Id.* at 1124. Such is not the case here; the Court is unaware of any intent upon TWA's part to seek a compulsory (or

permissive) counterclaim against Global. Furthermore, there are reasons, discussed above, other than TWA's risk of incurring double or inconsistent liability, to determine that Karabu is an indispensable party requiring dismissal of this action.