ASA ACCUGRADE, INC., Plaintiff,

v.

AMERICAN NUMISMATIC ASS'N et al., Defendants.

No. CIV.A. 04–2213(RWR).

United States District Court, District of Columbia.

May 4, 2005.

Harrison Terry Slaughter, Jr., Orlando, FL, for Plaintiff.

Andrew J. Terrell, Washington, DC, for Defendant.

### MEMORANDUM OPINION

ROBERTS, District Judge.

Plaintiff, a Florida corporation in the business of grading and authenticating rare coins, has sued eight defendants under the provisions of the Clayton Antitrust Act, 15 U.S.C. § 15 and 26, for alleged *per se* violations of the Sherman Antitrust Act, 15 U.S.C. §§ 1 and 2, namely, for conspiring to restrain trade unreasonably and monopolizing a market. Four of eight defendants have filed motions to dismiss pursuant to Fed.R.Civ.P. 12(b)(6).[1] Because the complaint fails to state a cause of action cognizable under the antitrust laws, it will be dismissed as to all defendants.

### BACKGROUND

Plaintiff has been in the business of grading and authenticating rare coins since 1984, providing its services to customers in the United States and Canada. Between 1999 and 2001, plaintiff gradually increased its market share, peaking at approximately eight percent of the market in 2001. Plaintiff attributes this increase to superior services. Plaintiff alleges that after 2001, in response to its growing market share, it fell victim to a conspiracy to defame it and tortiously interfere with its business relationships. In 2004, plaintiff sued several individuals for state law defamation and tortious interference.

In this federal action, plaintiff sues several non-individual defendants, specifically three business competitors and five non-competitors,[2] for injury arising from alleged defamation and tortious interference, contending that the conduct constitutes *per se* violations of federal antitrust laws. In addition, plaintiff alleges that the legal defense fund created by one of the defendants in the federal action to aid the individuals in the state law action is conduct in furtherance of the antitrust conspiracy.

### DISCUSSION

When appraising the sufficiency of a complaint in the face of a Rule 12(b)(6) challenge,

> [i]t is well settled that a district court ... should look only within the four corners of the complaint, and should accept the plaintiff's allegations as true and construe those allegations in the light most favorable to the pleader.

*Marshall County Health Care Authority v. Shalala,* 988 F.2d 1221, 1227 (D.C.Cir.

---

1. Four other defendants have not filed responsive pleadings, and plaintiffs have neither filed proof of service nor sought an entry of default pursuant to Fed.R.Civ.P. 55(a) as to them.

2. The five non-competitors are comprised of three not-for-profit entities, a collectors and dealers club, and a dealer and auctioneer. (Compl.¶¶ 3, 4, 6, 7, 10.) *See infra* note 4.

1993) (citing *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974)). To survive a motion to dismiss, the plaintiff must make factual allegations " 'that are neither vague nor conclusory' " and that " 'cover[ ] all the elements that comprise the theory for relief.' " *Dickson v. Microsoft Corp.*, 309 F.3d 193, 201–02 (4th Cir.2002) (quoting *Estate Constr. Co. v. Miller & Smith Holding Co.*, 14 F.3d 213, 220–221 (4th Cir.1994)).

> The pleader may not evade these requirements by merely alleging a bare legal conclusion; if the facts "do not at least outline or adumbrate" a violation of the Sherman Act, the plaintiffs "will get nowhere merely by dressing them up in the language of antitrust."

*Car Carriers Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1106 (7th Cir.1984) (quoting *Sutliff, Inc. v. Donovan Cos.*, 727 F.2d 648, 654 (7th Cir.1984)).

■ A civil plaintiff suing under authority of 15 U.S.C. § 15 must, as a threshold matter, allege an "antitrust injury" to its business, regardless of the conduct alleged to have violated the antitrust laws. *See Atlantic Richfield Co. v. USA Petroleum Co.*, 495 U.S. 328, 344, 110 S.Ct. 1884, 109 L.Ed.2d 333 (1990) ("[T]he right of action under § 4 of the Clayton Act [15 U.S.C. § 15] is available only to those private plaintiffs who have suffered antitrust injury."). Thus, a civil antitrust plaintiff "bears the initial burden of showing that the challenged action has had an actual adverse effect on competition as a whole in the relevant market; to prove it has been harmed as an individual competitor will not suffice." *Capital Imaging Assocs. v. Mohawk Valley Med. Assocs.*, 996 F.2d 537, 543 (3d Cir.1993); *see also Andrx Pharmaceuticals, Inc. v. Biovail Corp. Int'l*, 256 F.3d 799, 812 (D.C.Cir.2001) (noting that "a competitor may not claim an injury resulting from competition even when such competition was actually caused by conduct that violates the antitrust laws"); *Car Carriers*, 745 F.2d at 1107. The federal antitrust laws "were enacted for 'the protection of the competition, not competitors.' " *Brunswick Corp. v. Pueblo Bowl–O–Mat, Inc.*, 429 U.S. 477, 97 S.Ct. 690, 50 L.Ed.2d 701 (1977) (quoting *Brown Shoe Co. v. United States*, 370 U.S. 294, 320, 82 S.Ct. 1502, 8 L.Ed.2d 510 (1962)).

Section one of the Sherman Act prohibits any "contract, combination in the form of trust or otherwise, or conspiracy in restraint of trade or commerce among the several states, or with foreign nations." 15 U.S.C. § 1 (1997). Therefore, in addition to establishing an antitrust injury to the relevant market that also injured plaintiff, a plaintiff pleading a § 1 violation must also allege (1) that defendants entered into some agreement for concerted activity (2) that either did or was intended to unreasonably restrict trade in the relevant market, which (3) affects interstate commerce. *See Dial A Car, Inc. v. Transportation, Inc.*, 884 F.Supp. 584, 591 (D.D.C.1995), *aff'd*, 82 F.3d 484 (D.C.Cir. 1996); *Capital Imaging*, 996 F.2d at 542–43.

Whether the alleged restraint on trade is unreasonable is determined under either a rule-of-reason or a *per se* test. The rule-of-reason test takes into account all circumstances in assessing whether the challenged practice unreasonably restrains trade, and is presumptively favored. *Capital Imaging*, 996 F.2d at 543. Conduct that is manifestly anti-competitive or that would almost always tend to restrict competition may satisfy the *per se* test. However, "the Supreme Court has cautioned against the precipitate application of the *per se* doctrine." *Car Carriers*, 745 F.2d at 1108 (citing *Broadcast Music, Inc. v. Columbia Broadcasting Sys., Inc.*, 441 U.S. 1, 19–20, 99 S.Ct. 1551, 60 L.Ed.2d 1 (1979)). This caution has been pronounced expressly in the context of professional

associations. *Capital Imaging*, 996 F.2d at 543 (citing *Federal Trade Comm'n v. Indiana Fed'n of Dentists*, 476 U.S. 447, 458–59, 106 S.Ct. 2009, 90 L.Ed.2d 445 (1986)).

Section two of the Sherman Act makes it illegal to "monopolize, or attempt to monopolize, or combine or conspire with any other ... to monopolize any part of the trade or commerce among the several states, or with foreign nations." 15 U.S.C. § 2. A private plaintiff must allege an antitrust injury and two additional elements to make out a § 2 claim: "(1) the possession of monopoly power in the relevant market and (2) the willful acquisition or maintenance of that power as distinguished from growth or development as a consequence of a superior product, business acumen, or historic accident." *United States v. Microsoft Corp.*, 253 F.3d 34, 50, 59 (D.C.Cir. 2001) (quoting *United States v. Grinnell Corp.*, 384 U.S. 563, 570–71, 86 S.Ct. 1698, 16 L.Ed.2d 778 (1966)).

## I. MARKET ANTITRUST INJURY

■ The complaint does not contain any facts to establish that the rare coin grading and authenticating market as a whole has suffered an anti-competitive injury. This omission alone is fatal to both Sherman Act claims, 15 U.S.C. §§ 1 and 2. *See Atlantic Richfield Co. v. USA Petroleum Co.*, 495 U.S. at 344, 110 S.Ct. 1884; *Adams v. Pan American World Airways, Inc.*, 828 F.2d 24, 26 (D.C.Cir.1987) (noting that the "first prerequisite" to maintaining

a private antitrust action is alleging an "antitrust injury"); *Car Carriers*, 745 F.2d at 1107; *Capital Imaging*, 996 F.2d at 543. The only allegations in the complaint directed at this critical element are two conclusory statements devoid of factual support:

> Defendants' [antitrust] violations ... have and continue to harm competition
>
> ....
>
> [T]he natural and proximate effect of the illicit agreement and overt acts of the Defendants ... was to diminish competition in the coin grading and authenticating marketplace by removing ... [plaintiff's] market share and allowing ... [one competitor] to increase its market share to the point where it exclusively controls prices in the market.

(Compl.¶¶ 1, 19.) Such conclusory pleading cannot survive a Rule 12(b)(6) challenge. *Dickson*, 309 F.3d at 201–02; *Car Carriers*, 745 F.2d at 1106.

## II. OTHER § 1 ELEMENTS

■ Plaintiff alleges that seven of the eight defendants [3] "entered into an agreement to defame" plaintiff "and tortiously interfere with its advantageous business relationships with its dealers and customers (hereinafter referred to as the antitrust conspiracy)." (Compl.¶ 14.) The complaint does not, however, allege **facts** capable of supporting a reasonable inference that defendants formed an agreement to restrain trade unreasonably, but instead relies on this single bald, conclusory allegation.[4]

**3.** Nu Grade, LLC, allegedly one of plaintiff's competitors, is not accused of conspiring to restrain trade. (*See* Compl. ¶ 14.)

**4.** Moreover, the allegation is implausible on its face. The complaint offers no reason, and none is obvious, why any of the following five defendants would enter into such an agreement when, presumably, they have nothing to gain from an illegal conspiracy to restrain trade or to create a monopoly, as they are not

even competitors of the plaintiff: the American Numismatic Association, a "federally chartered not-for-profit" entity "that acts as a quasi-governmental body over numismatic collectors and dealers" (Compl.¶ 3); the Industry Council for Tangible Assets, a second not-for-profit entity that holds itself out as the national trade association for the rare coin industry (*id.* ¶ 7); the Professional Numismatists Guild, also a not-for-profit organization of rare coin dealers (*id.* ¶ 6); RCC.COLLECT-

The complaint also fails to demonstrate that the objectionable conduct, *i.e.*, the alleged defamation and tortious interference, is even anti-competitive or designed to restrain trade at all.[5] The facts alleged in the complaint support, at most, an inference that several false and defamatory statements regarding plaintiff's personnel, business services and products were either published by a defendant or published on an internet website maintained by a defendant. Indeed, most of the negative statements alleged in the complaint were allegedly authored by non-parties to this action. (*See* Compl. ¶ 16(a)-(1), (n).) Publishing negative statements about a business is not the sort of conduct that constitutes a *per se* antitrust violation. Such conduct is neither "manifestly anticompetitive," nor would it "almost always tend to restrict competition." *Concord Boat Corp. v. Brunswick Corp.*, 207 F.3d 1039, 1058 (8th Cir.2000).

The complaint's characterization of defendants' conduct as a "group boycott" that is a *per se* violation fails to meet minimum pleading requirements as well. (Compl.¶ 15(b).) Plaintiff offers no facts to establish that there even was a "boycott" by defendants, who are not, with one exception,[6] either suppliers or consumers of plaintiff's services and products. In any case, even allegations of a group boycott that enjoy factual support do not necessarily, as noted above, establish a *per se*

Sherman Act violation. *See Rothery Storage & Van Co. v. Atlas Van Lines, Inc.*, 792 F.2d 210, 215 (D.C.Cir.1986) ("[I]t has always been clear that boycotts are not, and cannot ever be, per se illegal.").

### III. OTHER § 2 ELEMENTS

The complaint fares no better with its § 2 claim. It fails to plead the necessary elements that are common to a § 1 violation, namely, an antitrust injury, and conduct in furtherance of the prohibited result. In addition, the complaint fails to plead the elements unique to a § 2 monopoly violation: "monopoly power in the relevant market and ... the willful acquisition or maintenance of that power as distinguished from growth or development as a consequence of a superior product, business acumen, or historic accident." *Microsoft*, 253 F.3d at 50.

The complaint does not allege facts to support an inference of monopoly power. As to this element, the complaint merely states, conclusorily, that

> the natural and proximate effect of the illicit agreement and overt acts of the Defendants ... was to diminish competition in the coin grading and authenticating marketplace by removing ... [plaintiff's] market share and allowing ... [a competitor] to increase its market share to the point where it exclusively controls prices in the market.

ING.COINS, a coin dealers and collectors club and internet users' newsgroup (*id.* ¶ 10); Heritage Capital Corporation, a rare coin dealer and auctioneer (*id.* ¶ 4).

**5.** Other acts that plaintiff alleges were undertaken in furtherance of the antitrust conspiracy do not even appear to be tortious, let alone constitute anti-competitive conduct. For example, plaintiff alleges that some defendants conducted a "bogus study" (Compl.¶ 15(g)), that others set up an "internet rules committee" (*id.* ¶ 15(h)), and another established a legal defense fund (*id.* ¶ 17). Still other con-

duct is merely alleged as "attempts," presumably unsuccessful, by defendants to disfavor plaintiff in one manner or another. (*Id.* ¶ 15(d), (e), (f).) Plaintiff does not explain how any of this conduct produced any injury to plaintiff at all, or how it constitutes anticompetitive conduct aimed at and capable of destroying competition in the market.

**6.** Defendant Heritage Capital is a coin dealer and auctioneer, and therefore is a potential consumer of plaintiff's grading and authentication services.

(Compl. ¶ 19.) This allegation is actually undermined by the facts alleged. Plaintiff claims only "an approximate 8(8%) percent share in the overall relevant market pertaining to rare coin grading and authentication services in the United States." (Compl. ¶ 12.) Shifting eight percent of the market does not necessarily equate to any appreciable change in competition or establish that some other entity achieved monopoly power as a result, and plaintiffs have alleged nothing to support such an inference. *See Rothery Storage,* 792 F.2d at 217 ("It is impossible to believe that an agreement to eliminate competition within a group . . . [with a six percent market share] can produce any of the evils of monopoly."); *cf. Microsoft,* 253 F.3d at 51, 54 (stating that monopoly power can be inferred from a dominant share of a relevant market protected by entry barriers, and inferring that an 80 percent market share is "predominant"). Plaintiff's conclusion that "[d]efendants [three direct competitors and five non-competitors] . . . have all benefited [sic] from the diminishment of [plaintiff's] market share" negates any inference that plaintiff's eight percent market share shifted to one competitor to give it monopoly power. In any case, plaintiff's conclusion is unsupported by fact, is illogical on its face (as monopoly power would harm, not benefit, other competitors and would not benefit non-competitors), and exposes the boilerplate character of the pleading. (Compl. ¶ 19 (emphasis added).)

## CONCLUSION

Plaintiff cannot convert whatever losses it may have suffered from the alleged tortious inference and defamation, the subject of a state law suit (*see* Compl. ¶ 17), into a federal antitrust claim by merely alleging in bare and conclusory terms the language of the antitrust statute. Here, plaintiffs have not pled facts sufficient to support a reasonable inference (1) that the relevant market suffered an antitrust injury giving rise to the plaintiff's injury, (2) that defendants formed an agreement to act in concert to restrain trade unreasonably, (3) that defendants' conduct was anti-competitive and in furtherance of an agreement to restrain trade or an attempt to monopolize an industry, or (4) that any defendant possessed monopoly power in the relevant market. For these reasons, the complaint cannot survive a motion to dismiss pursuant to Rule 12(b)(6), and will be dismissed. A final order accompanies this memorandum opinion.